**STATE of Missouri ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff–Respondent,**

v.

**STURMFELS FARM LIMITED PARTNERSHIP, et al., Defendants–Appellants.**

No. 56852.

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 14, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 19, 1990.

Application to Transfer Denied Oct. 16, 1990.

William J. Travis, St. Louis, for defendants-appellants.

Paul R. Ferber, Paul R. Sterrett, St. Louis, and Richard L. Tiemeyer, Jefferson City, for plaintiff-respondent.

SATZ, Presiding Judge.

In this condemnation action, defendant landowners appeal from a jury verdict finding that defendants sustained no damages as a result of plaintiff Missouri Highway and Transportation Commission's (Commission) taking of defendants' property. We reverse and remand with directions.

Defendants owned approximately 65 acres of land, zoned non-urban, in an unincorporated area of West St. Louis County. The Commission condemned nearly 8 acres of this property for use in new highway construction. The condemnation divided the property into 2 separate tracts, one tract of roughly 2 acres to the west of the Commission's right-of-way and another tract of roughly 55 acres to the east of the right-of-way.

After the Commission filed its condemnation petition, the trial court appointed commissioners to determine the amount of compensation to which defendants were entitled. § 523.010 RSMo 1986; Art. 1, § 26, Mo. Const. (1945). The Commissioners' report recommended awarding defendants

damages in the amount of $540,000. Both the Commission and defendants filed exceptions to the recommended amount, which the Commission paid into court. Approximately ten months thereafter, defendants entered into a contract to sell their remaining property, contingent upon rezoning. The property was eventually rezoned by ordinances which purported to require dedication of the right-of-way which the Commission had already taken. A jury trial followed to determine the amount of damages which the Commission's condemnation of the right-of-way had caused defendants.

Three appraisers testified at trial, two for defendants and one for the Commission. Their assessments of the damages sustained by defendants ranged from approximately $183,000 to over $1,200,000. However, the jury found the Commission owed defendants no compensation for the condemned property.

■ On appeal, defendants argue the trial court erred in admitting the only evidence supporting the finding of zero damages. The Commission based its theory of zero damages on evidence that there was a reasonable probability the condemned property would have had to be "dedicated" in order to obtain the rezoning which was crucial to defendants' claim of damages. Defendants argue that the prospect of dedication is irrelevant to calculation of the just compensation which the "takings clause", Art. 1, § 26, Mo. Const., guarantees owners of condemned property. We disagree.

■ "When part of a tract of land is condemned, the appropriate measure of damage is the difference between the fair market value of the entire property before the taking and the fair market value after the taking." *Missouri Highway & Transportation Commission v. Horine*, 776 S.W.2d 6, 12 (Mo. banc 1989). A taking occurs when the condemnor pays just compensation either directly to the owner of condemned property, or, prior to a trial on exceptions to the award made by appointed commissioners, when the condemnor pays into court the amount recommended by the commissioners. *State ex rel. Highway*

*Commission of Missouri v. Volk*, 611 S.W.2d 255, 258 (Mo.App.1980). "The fair market value of the land taken is what a reasonable buyer would give who is willing but did not have to purchase, and what a seller would take who is willing but did not have to sell." *Union Electric Co. v. Saale*, 377 S.W.2d 427, 429 (Mo.1964).

■ "Any factor that has a present, quantifiable effect on the market value of the property is proper as an element of damages." *Horine*, 776 S.W.2d at 12. Thus, when determining just compensation for condemned property, it is proper to take into account rezoning which was reasonably probable just before or after the taking and which affected the fair market value of the property at either of those times. *See State ex rel. State Highway Commission v. Carlson*, 463 S.W.2d 74, 80 (Mo.App.1970). The property "must be evaluated under the restrictions of the existing zoning and consideration given to the impact upon market value of the likelihood of a change in zoning." *Saale*, 377 S.W.2d at 429. This may be done either by determining the subject property's value as rezoned, minus a discount factor to allow for the uncertainty that rezoning would actually take place, or by determining the property's value with its existing zoning, plus an incremental factor because of the probability of rezoning. *Carlson*, 463 S.W.2d 81–82; *See generally* Nichols, *Eminent Domain*, § 12C.03[2].2 (1989).

The Commission presented evidence that rezoning of defendants' property was reasonably probable before the date of taking, February 20, 1987, when the Commission paid the recommended award of $540,000 into court. All three appraisers who appeared at trial testified that the non-urban zoning of the subject property had become obsolete prior to the condemnation. In fact, defendants had submitted a rezoning application to St. Louis County in October, 1986, approximately three months before the Commission took the right-of-way. Defendants offered no evidence of their property's value without rezoning.

However, the Commission contends that defendants could have achieved rezoning of

their property only by agreeing to "dedicate" the right-of-way which the Commission sought. Thus, according to the Commission, defendants suffered no damages as a result of the condemnation.

Dedication of some property to the local government in exchange for rezoning of other property is a form of contract, or conditional, rezoning. Rathkopf, *The Law of Zoning And Planning*, § 27.05, pp. 27–45 (1989). Contract rezoning occurs when "a county or municipality exercises its power to rezone in exchange for considerations given by or exacted from ... [a] developer." *Treme v. St. Louis County*, 609 S.W.2d 706, 716 (Mo.App. 1980). Since rezoning which is reasonably probable may be considered when determining just compensation for taken property, we believe that a reasonable probability of dedication, as a prerequisite to rezoning, may likewise be a proper element of damages in a condemnation case. A reasonable probability that taken property would have had to be dedicated in exchange for reasonably probable rezoning may be relevant to determination of the value of property never actually taken, if the probability of dedication had a quantifiable impact on the property's worth.

Contract rezoning is constitutional only "where the offer made or the exaction demanded for the rezoning bears [a] ... reasonable relationship to the activities of the developer...." *Treme, supra*, 609 S.W.2d at 716. *See also, State ex rel. Noland v. St. Louis County*, 478 S.W.2d 363, 367 (Mo.1972). If no reasonable relationship exists between the exaction demanded and the development, the "contract" between the rezoning authority and the developer is an unconstitutional contracting away of the police power in violation of Art. 11, § 3, Mo. Const. *See Treme.* Arguably, this unconstitutional contract is also a "taking" without just compensation in violation of Art. 1, § 26, Mo. Const.

Defendants first raised the issue of whether there was a sufficient nexus between dedication of the right-of-way for the new highway and the development of their surrounding property in a pre-trial motion in limine. Citing *Noland, supra,* defendants renewed their objection to the Commission's dedication evidence on these grounds repeatedly throughout trial, at times claiming that dedication which is not reasonably related to the activity for which rezoning is sought violates the takings clause, Art. 1, § 26, Mo. Const., rather than Article 11, § 3, Mo. Const. In the argument portion of their appellate brief, defendants again maintain there was not a constitutionally sufficient relationship between dedication of the right-of-way and the development of their remaining property. Under these circumstances, we conclude that the Point in defendants' brief which alleges that the Commission's dedication evidence violated the takings clause is also sufficient to preserve for review the issue of whether dedication would have constituted a reasonable exercise of state police power under Article 11, § 3, Mo. Const. The Commission does not contend otherwise.

The Commission does argue that consideration of the constitutionality of dedication is barred as a collateral attack on the rezoning ordinances, enacted subsequent to the condemnation of defendants' property and prior to trial. These ordinances purported to require dedication of the right-of-way which the Commission had previously taken.

Landowners are normally not permitted to challenge the constitutionality of zoning in condemnation proceedings. *Marvin E. Nieberg Real Estate Co., v. St. Louis County*, 488 S.W.2d 626, 630, 631 (Mo.1973); Nichols, *supra*, Section 12C.03[1]. However, defendants' claim that a dedication requirement would have been unconstitutional in this case is not a collateral attack on the zoning ordinances enacted after the condemnation of their property. As indicated, just compensation for taken property is calculated as of the time when the condemnor pays damages. When the Commission paid into court the amount of damages recommended for condemnation of the right-of-way, no ordinance rezoning defendants' property or re-

quiring dedication of the right-of-way existed. Therefore, the constitutionality of the ordinances ultimately enacted is not an issue in this case.

More important, the rationale for barring collateral attacks on zoning ordinance does not apply in this case. The general rule prohibiting landowners from contesting the constitutionality of zoning ordinances in condemnation case is based upon the assumption that "ample opportunity for direct attack existed prior thereto." Nichols, *supra*, Section 12C.03[1]. Accordingly, our Supreme Court in *Nieberg* found that a landowner's failure to challenge the zoning of his property before it was taken constituted "a self-inflicted wound[,]" resulting from the owner's "studied acquiesence" in the property's precondemnation zoning. 488 S.W.2d at 631.

By contrast, defendants in the present case had little reason to challenge the rezoning ordinances enacted after the condemnation of their property until this condemnation action. The Commission had long since taken the right-of-way, which the rezoning ordinances "required" to be dedicated to St. Louis County. It is thus proper to consider the constitutionality of the dedication requirement in the present case.

Neither party presented any evidence concerning the nexus between dedication of the right-of-way for the new highway and the development of the remainder of defendants' tract. Implicit in defendants' argument that there is no reasonable relationship between the dedication requirement and the development of their property for its rezoned use is the unarticulated premise that the Commission, as condemnor, should bear the burden of proving otherwise. We agree.

Since zoning decisions are presumptively valid, the party challenging the reasonableness of a condition precedent to rezoning has the burden of establishing that condition's unreasonableness. *Treme*, *supra*, 609 S.W.2d at 717. This presumption applies prospectively for the administrative convenience of zoning authorities, which might otherwise be routinely required to prove the reasonableness of their enactments in suits brought by the thousands of landowners affected by most zoning legislation. The presumption also reflects "the judicial deference required to be given to the legislative branch of government under the separation of powers doctrine." *Rathkopf*, § 27A.04[2], P. 27A21.

There is no reason for applying the presumption of zoning decisions' validity retroactively for the benefit of a condemnor, as opposed to a zoning authority. Therefore, the dedication requirement in the rezoning ordinances enacted subsequent to the condemnation of defendants' property here did not create a presumption of the requirement's validity which related back to the date of taking, the time that just compensation is computed.

Generally, in condemnation cases, "the burden of proof is on the landowner to establish his damages." *City of St. Louis v. Kisling*, 318 S.W.2d 221, 224 (Mo.1958). As noted, defendants satisfied this burden by proving they sustained a substantial loss, based upon a reasonable probability of rezoning. Although the Commission, as condemnor, is technically the plaintiff, the Commission is in a defendant's posture with respect to the issue of damages. The Commission's theory is the landowners suffered no compensable loss because dedication was a probable precondition to the rezoning on which the owners predicate their claim of damages. This theory is in the nature of an "affirmative defense," which the Commission should bear the burden of proving. This proof consists of two distinct elements: (1) a dedication requirment would have been constitutional, based upon a reasonable relationship between the dedication and the activity for which rezoning was sought and (2) a reasonable probability that St. Louis County would have required dedication if it was legal to do so. The Commission made no effort to show the existence of the former element, the constitutionality of a dedication requirement. Therefore, this case must be reversed and remanded for retrial.

On remand, the trial court should conduct a hearing prior to trial on the legal issue of whether dedication would have been constitutional. If the court concludes there is no reasonable relationship between a dedication requirement and development of defendants' remaining property, it must exclude evidence concerning the prospect of dedication in the new trial, unless that evidence is relevant to some material issue other than dedication, for example, the reasonable probability of rezoning.

If, on the other hand, the court determines that dedication of the right-of-way sought by the Commission would have been constitutional, the court must allow the Commission to present evidence on the factual issue of whether a dedication requirement was reasonably probable prior to the condemnation of defendants' property. Factors relevant to proof of the probability of zoning changes in general, and the probability of dedication as a precondition to rezoning in particular, include neighborhood changes, general changes in land use, and a pattern of prior similar actions by the zoning authority. See Nichols, *supra,* Section 12C.03[3].

We address two issues which are not essential to the disposition of this appeal, but which may recur on remand. Both concern the admissibility of testimony by Mr. Arthur Schneider, the Commission's expert appraiser.

Defendants contend the trial court erred in refusing to exclude Mr. Schneider's testimony in its entirety. In 1979 and 1983, Mr. Schneider had appraised the property involved in this action in connection with a federal tax return for the estate of a deceased husband of one of the defendants. Defendants contend that Mr. Schneider should not have been permitted to provide expert testimony for the Commission, both because of his prior access to allegedly confidential information regarding the subject property's "deficiencies," and because defendants would be unable to impeach Mr. Schneider regarding his allegedly unethical conduct without revealing their former employment of him and, there-by, opening the door to revelation of his previous appraisal. We disagree.

There is no general prohibition against one party calling as its own witness an expert formerly employed by the opposing party. The right to call an expert previously employed by an opposing party "depends on the particular set of circumstances presented." *State ex rel. Highway Commission v. Kalivas,* 484 S.W.2d 292, 294 (Mo.1972). In *Kalivas,* the Court held the plaintiff condemnor was free to call a real estate appraiser whom defendant condemnees had hired to appraise their property in preparation for trial on exceptions to the recommended amount of just compensation. The Court explained that appraisers "are to be treated as any other so-called expert witnesses," *Id.* at 295, who are generally "available to either party for obtaining information about material facts." *State ex rel. Uregas Service Co. v. Adams,* 364 Mo. 389, 262 S.W.2d 9, 12 (1953).

In some other state jurisdictions, courts have held that the attorney-client privilege may bar testimony by an expert originally retained by an opposing party. Their theory is "the expert becomes the agent or employee of the party by whom he is engaged, and therefore the communications between the engaged expert and counsel for his employer fall within the scope of the attorney-client privilege." Annotation, 71 A.L.R.3d 1119, 1132 (1989). However, such a privilege is "strictly construed in the interest of bringing to light relevant facts." *People v. Donovan,* 57 Cal.2d 346, 19 Cal. Rptr. 473, 477, 369 P.2d 1, 5 (1962). Regardless of whether communications between an expert and counsel for his employer are privileged, "an important consideration in determining whether one employed as an expert by one party may ... testify as such at the instance of the adverse party is whether, under the particular circumstances, it is fair to do so." Annotation, A.L.R.2d 1182, 1192 (1961) and cases cited therein.

Although it might be unfair to allow an expert to testify based upon confidential and possibly privileged information ac-

quired from an opposing party, defendants made no showing of any unfairness in permitting Mr. Schneider to testify. The trial court overruled defendants' pre-trial motion to exclude Mr. Schneider's testimony on the following grounds:

My understanding from the discussions we had was that Mr. [Schneider] did this appraisal in 1979. That the information that was furnished to him was furnished to him at that time.... and that there will be no information that was gathered or obtained by him in 1979 that would enter into the development of the information that he ... intends to use to testify in this case.... I'll monitor his testimony at the time of trial to make sure that the representations that were made in our initial discussion ... are fully complied with.

Defendants did not make a record showing the specific nature of any confidential or privileged information revealed to Mr. Schneider in the course of his prior employment as appraiser of their property. Defendants thus did not establish that Mr. Schneider's testimony would violate any privilege or otherwise cause unfairness.

Moreover, the Code of Professional Ethics of the American Institute of Real Estate Appraisers permits an appraiser who has received material confidential information from one client to accept a related assignment from another client if the appraiser "is able to obtain data from other sources that is sufficient to support a properly developed appraisal analysis or opinion." Canon 4, Ethical Rule 4–3(c). Mr. Schneider testified that he based his opinion of defendants' damages on studies of comparable sales before and after the 1987 condemnation of defendants' property. Thus, as the trial court noted prior to trial, Mr. Schneider's testimony would "[pertain] to independent work that he did in working up his testimony for this matter."

■ Defendants were free to cross-examine Mr. Schneider regarding any possible breach of ethics without risking disclosure, on re-direct, of Mr. Schneider's 1979 appraisal. The scope of re-direct examination of a witness is committed to the sound discretion of the trial court. *Johnson v. Minihan,* 355 Mo. 1208, 200 S.W.2d 334, 336 (1947). Although "when a party cross-examines a witness about certain conduct, the door is open for that witness to give the reasons for such conduct on redirect," *State v. Neverls,* 702 S.W.2d 901, 905 (Mo.App.1985), the door does not swing off its hinges to permit irrelevant and prejudicial testimony.

The value of defendants' property as of 1979, when Mr. Schneider performed his first appraisal, was entirely irrelevant to the value of the property just before and after the 1987 condemnation involved in the present case. Surely the trial court would have exercised its discretion to exclude outdated evidence of the property's value, if the Commission had sought to elicit that information from Mr. Schneider on re-direct. Defendants were thus free to cross-examine Mr. Schneider without fear that such prejudicial evidence would be interjected into the case.

■ Mr. Schneider also testified that, prior to the condemnation of defendants' property, the City of Town and Country had rezoned land adjoining defendants' property to a commercial classification. The reason for this rezoning, he said, was the proposed construction of the new highway for which the right-of-way in issue was needed. He determined the City's motivation for the rezoning from conversations he had had with officials of the City.

This testimony of Mr. Schneider was elicited by the Commission, over defendants' objections, to support Mr. Schneider's opinion that the condemnation had increased the value of the west tract of defendants' property, thereby reducing defendants' total damages. Defendants contend, as they did at trial, that Mr. Schneider's opinion was based upon inadmissible hearsay—his conversations with the unnamed officials—and, therefore, his opinion should have been excluded. We agree.

Prior to 1984, an expert generally was permitted to state reasons for his opinion only if the opinion had a substantial basis in facts actually established at trial. *See Fahy v. Dresser Industries, Inc.,* 740

S.W.2d 635, 638 (Mo. banc 1987); *Davies v. Carter Corburetor Div., ACF. Industries, Inc.,* 429 S.W.2d 738, 751 (Mo.1968). However, our Supreme Court created a narrow exception which at times permitted real estate experts to testify to land value based upon inadmissible evidence, including sources of which the witness had no first-hand knowledge. *E.g. State ex rel Highway Comm'n v. Barron,* 400 S.W.2d 33, 38 (Mo.1966); *Del–Mar Redevelopment Corp. v. Assoc. Garages, Inc.,* 726 S.W.2d 866, 871 (Mo.App.1987). Our courts have not expressly restricted the admission of hearsay basis evidence to data on which real estate experts customarily rely, but that is the only sort of basis evidence which has been allowed. *E.g. Barron, supra* at 33; *Del–Mar Redevelopment Corp., supra* at 866. This restriction or limitation is reflected in our present statute governing an expert witness' testimony, § 490.065 RSMo 1989 (Supp.), and is consistent with Rule 703, Fed.Rules of Evidence.

■ Thus, a witness' expertise is an acceptable substitute for traditional authentication techniques only if the witness can, by virtue of his expertise, vouch for the reliability of the facts which form the basis of his opinion. In the present case, Mr. Schneider's hearsay testimony concerning what unnamed sources from the City of Town & Country had told him about why that City had made a particular zoning decision was not in any degree redeemed by Mr. Schneider's expertise as an appraiser. The credibility of this basis evidence depended wholly on the credibility of anonymous declarants unavailable for cross-examination. Therefore, Mr. Schneider's expertise was not an acceptable substitute for more conventional authentication techniques.

Reversed and remanded.

SMITH and GRIMM, JJ., concur.