Donald M. EDGELL, Plaintiff–
Respondent,

v.

Mark David LEIGHTY, Defendant–
Appellant.

No. 17405.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 10, 1992.

Motion for Rehearing or Transfer to
Supreme Court Denied Feb. 27, 1992.

Larry K. Bratvold, Springfield, for plaintiff-respondent.

H.F. Glass, Schroff, Glass & Newberry,
P.C., Springfield, for defendant-appellant.

MAUS, Judge.

This action was instituted by plaintiff, Donald M. Edgell, to recover damages for personal injuries and property damage resulting from a motor vehicle accident. Defendant, Mark D. Leighty, counter-claimed for property damage. A jury assessed the plaintiff's fault at 35% and the defendant's fault at 65%. Pursuant to that assessment, judgment was entered in favor of plaintiff and against defendant for $75,331.11. Judgment was entered in favor of defendant and against plaintiff in the sum of $1,837.50. Defendant appeals.

The following is a summary of the evidence necessary for the disposition of this appeal. Plaintiff was driving south on Highway 13 in St. Clair County in his 1973 Pontiac. He pulled into the parking lot of a restaurant on the west side of the highway. He pulled back out onto the highway because the restaurant was closing. He drove south toward the R & S Truck Stop which was located on the east side of the highway. He was followed by a 1987 Toyota Corolla driven by Donald Johnson. Johnson was followed by the defendant who was driving a 1989 Ford pickup.

Plaintiff reached a speed between 30–40 miles per hour, but slowed down to approximately 15 miles per hour about a quarter of a mile from the truck stop. The speed limit was 55 m.p.h. As the plaintiff slowly approached the truck stop, the defendant attempted to pass the Johnson vehicle and the plaintiff's vehicle. When defendant was approximately even with the Johnson vehicle, plaintiff attempted to turn left into

the truck stop. The front of defendant's vehicle collided with the left side of plaintiff's vehicle in a "T" fashion.

Johnson testified there was no left turn signal light made by the plaintiff's automobile. A passenger in plaintiff's car said he heard the turn signal clicking. The investigating Highway Patrol Sergeant testified he found the brake lights and the tail lights on plaintiff's automobile to be in working condition. He found the rear left turn signal light would come on bright but it would not blink on and off. Plaintiff submitted on the defendant's excessive speed and failure to honk. Defendant submitted on the plaintiff's failure to keep a lookout and failure to signal.

After being transported from the scene by helicopter, plaintiff was admitted to Cox South Hospital on December 25, 1989. Plaintiff's spleen was removed. A tear of the small bowel was repaired. Plaintiff also suffered chest injuries which included fractured ribs. He was placed on a ventilator due to these chest injuries. After he was taken off this ventilator, he began to develop infiltrates in his lungs. On January 3, 1990, plaintiff developed congestive heart failure and had to be reintubated and placed back on the ventilator. The doctor testified that had the plaintiff not been reintubated and placed back on the ventilator, the plaintiff could very well have died. Plaintiff continuously received morphine during his hospital stay. He was in a confused state for several days. For approximately the first two weeks of the hospital stay, he slipped in and out of consciousness. On January 13, 1990, he was moved out of intensive care into a regular room. At this time, the plaintiff decided he "might make it."

Plaintiff's friend, Betty Edwards, testified that she visited plaintiff in the hospital and he was in very "bad shape" during his hospital stay. In her opinion, plaintiff would not have been able to conduct business affairs while in the hospital.

Plaintiff was discharged on January 17, 1990. His medical expenses from December 25, 1989 *until* January 17, 1990, totaled $50,094.00. Plaintiff had no loss of earnings since he was disabled and did not work before the accident.

Plaintiff filed his petition on January 18, 1990. As stated, the jury assessed defendant's fault at 65% and 35% against plaintiff. A judgment for the plaintiff and against the defendant was entered for $74,811.11 for personal injury and $520.00 for property damage. A judgment for the defendant and against plaintiff was entered for $1,837.50 on defendant's counterclaim for property damage. Defendant states two points on appeal.

His first point is:

"The trial court erred in refusing to allow defendant to cross examine plaintiff and offer evidence about the date plaintiff filed suit because that fact was relevant to plaintiff's medical condition and his damages and was inconsistent with his testimony on direct examination."

In advancing this point, defendant acknowledges that he could not have shown plaintiff filed his petition the day after he was released from the hospital for the purpose of showing plaintiff was litigious and avaricious. In so doing, he recognizes the principle stated in a recent case.

"Accessing the legal system is normally not to be discouraged and, exercising one's right to utilize the legal system within established rules and procedures should normally not be used to attempt to discredit a litigant with a jury.... The right to seek the advice of counsel is so fundamental that, absent a justifiable reason and supporting evidence, counsel risks reversal when attempting to discredit a litigant by cross-examining him about the time and circumstances of his having consulted an attorney to discuss and exercise his legal rights." *Carlyle v. Lai*, 783 S.W.2d 925, 929 (Mo.App. 1989).

However, defendant argues that he should have been permitted to show the date to establish, at least by inference, plaintiff's injuries were not as severe as described in his testimony, by the testimony of Betty Edwards and others.

Even if evidence of that date was relevant, that did not automatically mandate that it was admissible. The applicable principle has been succinctly stated.

"It is true that the sole fact that evidence is logically relevant does not require its admission; the evidence must also have some probative force over and above logical relevancy.... If evidence pertaining to collateral matters brings into a case new controversial matters which would result in confusion of issues, constitute unfair surprise, or cause prejudice wholly disproportionate to the value and usefulness of the offered evidence, it should be excluded." *Conley v. Kaney*, 250 S.W.2d 350, 353 (Mo.1952).

In sustaining the plaintiff's objection to the tendered cross-examination and evidence, the trial court adroitly recognized and applied the applicable principles of law.

"Mr. Glass seeks to utilize the information for a different purpose, and that is to inquire regarding the clarity of the plaintiff's thought processes and abilities to transact his own business at a time fairly near to his hospitalization. But of course it would still have the [prejudicial effect] so therefore we have a potential reason which is appropriate and a potential effect which is inappropriate.

I take it from this footnote 3 on page 929 [*Carlyle*] that basically what I have to do is balance, is the harm justified by the benefit. Or as they put it in the federal rule, all the relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.

It's a close call. My decision is this. Mr. Edgell has testified that for 2 weeks he didn't know his surroundings and didn't know who was there and so forth, but thereafter he improved. If there were evidence that he filed this lawsuit within that 2–week period there is no question I would allow Mr. Glass to proceed. But I don't recall his testimony to be that he was of such unclear mind by January 18th that he didn't know what he was doing or couldn't conduct his own business. So, therefore, I determine that I will not admit evidence regarding the date of filing."

"A trial court has considerable discretion in the exclusion of evidence and, absent abuse of discretion, its action will not be grounds for reversal." *Kelly by Kelly v. Jackson*, 798 S.W.2d 699, 704 (Mo. banc 1990). The trial court did not abuse its discretion. The appellant's first point is denied.

Defendant's second point on appeal is:

"The trial court erred in refusing to allow defendant to inquire about portions of the Missouri Highway Patrol Report and to admit it into evidence because (1) it was relevant; (2) the Highway Patrol Sergeant was plaintiff's witness and he identified, sponsored and testified from the report; and (3) the Highway Patrol Sergeant was an expert witness and his report contained information and data on which he based his conclusions."

That point has the following background. Plaintiff called Highway Patrol Sergeant J.D. Starbuck as a witness. Plaintiff established that the sergeant had been with the Highway Patrol for 30 years, had received training at the Highway Patrol Academy and investigated numerous motor vehicle accidents. On direct examination, the plaintiff had the sergeant describe the scene of the motor vehicle accident including the location of the vehicles, the marks left by the vehicles and the location of debris. Without objection, the sergeant volunteered the location of the point of impact. The sergeant stated that the Collision Diagram drawn on the Missouri Uniform Accident Report accurately represented his findings at the scene. Plaintiff introduced an enlargement of that diagram.

The "Officer's Statement" portion of that report includes the following: "According to witnesses, No. 2 had no brake lights and made no signal. They said the vehicle had just made a turn into a station at Collins and almost caused an accident because there were no signals made." The report also contained a section headed "Probable Contributing Circumstances" under which there were 18 multiple-choice

squares to be checked to indicate improper action by one or both drivers.

■ Under his second point, defendant initially argues the trial court erred in not permitting him to have the sergeant read the "Officer's Statement" and state that he checked the multiple-choice square indicating plaintiff made an "improper turn". He argues:

"When Sergeant Starbuck became an expert witness, the facts and data upon which he based his opinion became part of the relevant background which defendant could explore. The fact that some of the data may have been hearsay did not mean that Sergeant Starbuck could not consider it and did not mean that it was not a proper subject of inquiry on cross-examination.

In 3A Wigmore, *Evidence* § 992 (Chadbourn rev. 1970), it is said:

'(1) The data on which an expert rests his specific opinion (as distinguished from the facts which make him skillful to form one at all) may of course be fully inquired into upon cross-examination. Without them, the value of the opinion cannot well be estimated.' "

He does not cite the more relevant authority of a recently enacted statute, § 490.065 RSMo Cum.Supp.1991, which is set forth marginally.[1]

Defendant has assumed the brief history of Sergeant Starbuck's training and employment established that Sergeant Starbuck was, in some abstract sense, an "expert". It did not. Cf. *Shelby County R–IV School District v. Herman*, 392 S.W.2d 609 (Mo.1965). Moreover, even assuming Sergeant Starbuck was in some sense an expert, and considering § 490.065, defendant's initial argument has no merit. It has long been the rule in this State that, with rare exception, an expert may not give an opinion based on hearsay. *State ex rel. Missouri Highway & Transportation Commission v. Sturmfels Farm Ltd. Partnership*, 795 S.W.2d 581 (Mo.App. 1990).

It has been suggested that § 490.065.3 relaxes that rule. William C. Hopkins, *Expert Testimony: New Rules, New Questions*, 46 J.Mo.Bar 175 (April–May 1990). It does, but only to a limited extent. The facts or data which may be considered by an expert "must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable." § 490.065.3.

It is not necessary or appropriate to discuss this limitation at length. Section 490.-065 is substantially the same as Fed. R.Evid. 703. A recent case has sagaciously set forth a limitation upon the facts and data that may be considered, which is applicable to this case.

"Under Fed.R.Evid. 703, the facts underlying an expert's opinion may be those 'made known to him [or her] ... if [they are] of a type reasonably relied upon by experts in a particular field.' The rule contemplates that facts and data which are otherwise inadmissible as hearsay may be used by experts in forming opinions if they meet the criteria of 'reasonable reliance.' *Soden v. Freight-*

---

1. **"490.065. Expert witness, opinion testimony admissible—hypothetical question not required, when.**—1. In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

2. Testimony by such an expert witness in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

3. The *facts or data in* a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

4. If a reasonable foundation is laid, an expert may testify in terms of opinion or inference and give the reasons therefor without the use of hypothetical questions, unless the court believes the use of a hypothetical question will make the expert's opinion more understandable or of greater assistance to the jury due to the particular facts of the case." § 490.065 RSMo Cum. Supp.1991 (L.1989, S.B. 127, etc.).

*liner Corp.*, 714 F.2d [498] at 502 [5th Cir.1983]. Nevertheless, the Advisory Committee Notes to Fed.R.Evid. 703 specifically mention that observations of eyewitnesses do not satisfy this criteria and cannot be used by experts in accident reconstruction. The court in *Dallas & Mavis Forwarding Co. v. Stegall* [659 F.2d 721 (6th Cir.1981)] refused to admit the expert opinion of the investigating officer which was based on the statement of the defendant truck driver because 'to permit his [eyewitness] opinion to be heard through the testimony of an official would cloak it with an undeserved authority that could unduly sway a jury.' 659 F.2d at 722. 'Although courts may allow experts a great deal of discretion in choosing the base for their opinions, the court must examine the reliability of their sources.' *Soden v. Freightliner Corp.*, 714 F.2d at 505 (citations omitted). Trooper Clark's use of the statements of the milk truck driver in forming his opinions required the exclusion of his testimony regarding Faries' excessive speed and loss of control of the motorcycle at the time of the accident." *Faries v. Atlas Truck Body Mfg. Co.*, 797 F.2d 619, 624 (8th Cir.1986).

See also *State ex rel. Missouri Highway & Transportation Commission v. Sturmfels Farm Ltd. Partnership*, supra, applying § 490.065. It would have been improper for Sergeant Starbuck to express an opinion that plaintiff made an improper turn when that opinion was based upon the hearsay statements of witnesses. It necessarily follows that it would have been error for Sergeant Starbuck to read those hearsay statements to the jury.

■ Defendant's remaining argument under this second and last point is the trial court erred in not admitting the Missouri Highway Patrol Report of the accident. He offered the report in its entirety. Plaintiff objected to the hearsay and conclusory portions of that report.

The general rule applicable to the admission of accident reports has been summarized.

"It is generally recognized that the business records exception does not make admissible anything contained in the record or report which would not be admissible if testified to by the maker of the record or report. Consequently, ... the content of a police report which was not the result of the reporting officer's own observations, but was the product of statements made to the officer by third persons, could not be admitted into evidence under the business records exception to the hearsay rule, unless the third party making the statement was under a business duty to do so." Annot., Police Reports as Business Records, 77 A.L.R.3d 115, 133 (1977).

That rule is applicable in Missouri. *Hamilton v. Missouri Petroleum Products Co.*, 438 S.W.2d 197 (Mo.1969); *Freeman v. Kansas City Power & Light Company*, 502 S.W.2d 277 (Mo.1973).

Nevertheless, defendant argues that because plaintiff introduced the Collision Diagram, the court should have admitted the report *in toto*. That is not the case. The trial court properly admitted the factual diagram. *Fieser v. Snyder*, 797 S.W.2d 752 (Mo.App.1990). Upon plaintiff's objection, it properly rejected defendant's offer which included inadmissible hearsay. *McCoy v. Hershey Chocolate Co.*, 655 S.W.2d 128 (Mo.App.1983). Defendant's second point is denied and the judgment is affirmed.

FLANIGAN, C.J., and SHRUM, P.J., concur.