**STATE of Missouri, Respondent,**

v.

**Steven Ray BYBEE, Appellant.**

**No. WD 67154.**

Missouri Court of Appeals, Western District.

March 25, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 29, 2008.

Application for Transfer Denied June 24, 2008.

Shaun J. Mackelprang, Jefferson City, for respondent.

L. Thomas Elliston, Webb City, for appellant.

Before HAROLD L. LOWENSTEIN, Presiding Judge, LISA WHITE HARDWICK, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Steven Bybee appeals from his convictions by jury of one count of involuntary manslaughter, § 565.024,[1] and two counts of assault in the second degree, § 565.060. For the following reasons, the judgment is reversed, and the case is remanded for a new trial.

On the evening of November 24, 2004, sixteen-year-old Bybee and three other teenagers were involved in a high-speed single car accident along HH Highway in Vernon County. As a result of that accident, Ashli O'Dell died, and Bybee, Nathan Grice, and Dalton Howell were seriously injured.

Dale Carriker and Glen Roe noticed the car in a field off the side of the highway and stopped to help. When they arrived, Appellant was sitting in the front passenger seat and Grice was standing outside the car next to him. Howell and O'Dell were about 50 yards away lying on the ground. Carriker and Roe telephoned for help.

Corporal William Bush of the Missouri Highway Patrol arrived a short while later. When questioned by Corporal Bush, Grice initially stated that Bybee had been driving at the time of the accident. Upon hearing that comment, Bybee denied driving the car. Grice then claimed not to know who was driving but that he had been sitting in the front passenger seat. Howell claimed to have been in the back seat with O'Dell but not to know who had been driving. When talking to Bybee, Corporal Bush smelled alcohol on his breath. Corporal Bush eventually placed Appellant under arrest for driving while intoxicated.

When Corporal Edward Wilde arrived, Corporal Bush informed him that O'Dell was dead, Bybee had been driving the car, and Bybee was intoxicated. When questioned by Corporal Wilde, Bybee denied being the driver of the car, and Howell and Grice claimed not to know who was driving the car. Corporal Wilde reminded Bybee that he was under arrest and requested a blood sample. Subsequent testing of that sample indicated that Bybee's blood alcohol level was .079%.

Later that evening, at the hospital, Grice told Corporal Wilde that Bybee had been driving the car. Two days later, he gave a written statement to that effect.

Sergeant Brown of the Missouri Highway Patrol conducted an accident reconstruction analysis of the crash. He determined that the car had been traveling at a minimum of 100 miles per hour when the right tires briefly went off the side of the

---

**1.** All statutory references are to RSMo 2000 unless otherwise noted.

road, the driver steered abruptly left and then overcorrected to the right, the car began to spin off the right side of the road until it hit a driveway embankment, the car went airborne at 91 miles per hour, and the car then rolled over 300 feet. In his report, Brown repeatedly referred to Bybee as the driver of the car.

Bybee was subsequently charged by information in the Circuit Court of Vernon County with one count of involuntary manslaughter and two counts of assault in the second degree. Bybee was tried by jury and found guilty as charged. He was sentenced to concurrent terms of seven years on the manslaughter count and five years on each of the assault counts. Bybee appeals from those convictions.[2]

■ On appeal, Bybee challenges the admission into evidence of the accident reconstruction report. Since his defense at trial was to deny that he was the driver of the car, Bybee argues that the trial court erred in admitting the report over his objection to the report's conclusive references to him as the driver of the car and its placement of him in the driver's seat because that conclusion was based entirely on hearsay.

■ "Absent a clear abuse of discretion, an appellate court will not interfere with a trial court's ruling on the admission or exclusion of evidence." *State v. Broussard*, 57 S.W.3d 902, 911 (Mo.App. S.D. 2001). "An abuse of discretion will be found when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

While the Dissent goes into great detail setting out the evidence and inferences

drawn therefrom in the light most favorable to the jury's verdict, the sufficiency of the evidence to support the verdict is not challenged on appeal. The sole issue before this Court is whether the trial court abused its discretion in admitting the accident reconstruction report in which the reconstruction expert set forth opinions based solely upon his assessment of hearsay statements offered by witnesses.

"It has long been the rule in this State that, with rare exception, an expert may not give an opinion based on hearsay." *Edgell v. Leighty*, 825 S.W.2d 325, 328 (Mo.App. S.D.1992). Section 490.065.3 relaxes that rule, "but only to a limited extent." *Id.* Under § 490.065.3, "[t]he facts or data which may be considered by an expert 'must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject *and must be otherwise reasonably reliable.*' " *Id.* (quoting *§ 490.065.3* ) (emphasis added). Accordingly, "[t]he first mandate under subsection (3) requires a court to determine whether the facts and data are reasonably relied upon by experts in the particular field." *Goddard v. State*, 144 S.W.3d 848, 854 (Mo.App. S.D.2004). "The second mandate under section 490.065.3 requires the trial judge to look beyond the expert's testimony that his or her reliance on certain facts and data are reasonable due to the general standard of the expert's field ... [and] ensure that the facts and data are otherwise reasonably reliable." *Id.*

Applying this statutory requirement, in *Edgell v. Leighty*, 825 S.W.2d 325, 328–29 (Mo.App. S.D.1992), the Southern District of this Court held that a police officer called to testify as an accident reconstruction expert should not have been allowed

---

**2.** Bybee brings eleven points on appeal. Because his third point requires reversal and

remand for a new trial, we need not address any of his other points.

to express an opinion that the driver made an improper turn when that opinion was based upon the hearsay statements of witnesses. In *Goddard v. State,* 144 S.W.3d 848, 854 n. 6 (Mo.App. S.D.2004), the holding of *Edgell* was cited as a textbook example of how the second requirement of § 490.065.3 should be applied. In a similar vein, "the Advisory Committee Notes to Fed.R.Evid. 703 specifically mention that observations of eyewitnesses do not satisfy this [reliability] criteria [in the context of the comparable federal rule of evidence] and cannot be used by experts in accident reconstruction." *Edgell,* 825 S.W.2d at 329.

Sergeant Brown's conclusion that Bybee was the driver of the car was derived from hearsay statements made by witnesses. Appellant had denied driving and stated that Grice was the driver. Sergeant Brown chose to disbelieve Appellant and to accept as credible Grice's assertion that Appellant was driving the car. The only other evidence tending to establish Appellant as the driver was a hearsay statement from Grice's friend stating that Grice told him in a telephone call that Appellant was driving the car and witnesses' statements that they had seen Appellant driving the car earlier in the evening.

■ Since it was based solely upon statements made by witnesses, Sergeant Brown's repeated reference to his conclusion that Appellant was the driver within his report was improper. He simply made a credibility determination and accepted it as fact, and his expertise in accident reconstruction did not make him any more competent to judge the credibility of the witnesses and reach that conclusion than the trier of fact. "[A]n expert who consults and merely summarizes the content of a hearsay source without applying his own expertise is merely a hearsay witness." *Graves v. Atchison–Holt Elec. Co-op.,* 886 S.W.2d 1, 7 (Mo.App. W.D.1994). Accordingly, the trial court abused its discretion in failing to exclude those statements from the record.

■ The prejudice resulting from Sergeant Brown's conclusion that Appellant was the driver is readily apparent. In the first section of the report, providing a synopsis thereof, Sergeant Brown simply stated: "Vehicle # 1 was a Dodge Stratus. It was driven by Steven R. Bybee." Aside from noting, in passing, in the middle of the report, that Bybee denied being the driver of the car, the report consistently, repeatedly, and conclusively referred to Bybee as the driver. Admitting Sergeant Brown's opinion that Appellant was the driver of the car, based upon his assessment of the credibility of witness statements, serves to cloak the witnesses' statements and Sergeant Brown's conclusion based thereupon "with an undeserved authority that could unduly sway a jury." *Edgell,* 825 S.W.2d at 329 (internal quotation omitted).

The judgment is reversed, and the case is remanded for a new trial.

ALL CONCUR.

HAROLD L. LOWENSTEIN, Judge, dissenting.

I respectfully file this dissent, and would affirm the judgment.

The majority expresses concern about inclusion of additional facts being presented in the dissent. The following facts, and the reasonable inferences arising from those facts, are now presented for the following two purposes: (1) To establish a frame of reference for the evidentiary issue in dispute, and (2) To provide context for the rest of the points raised in this appeal since the facts are relevant and necessary to support an affirmance of the judgment.

Additional facts of matters admitted in evidence and favorable to the jury's verdict are as follows: On the evening in question, the deceased, Ashli O'Dell, drove Dalton Howell and Dale Carriker to Bybee's house. Ashli moved over to let Bybee (who brought four beers) drive. Bybee drove to a grocery store where someone bought beer for the teenagers. After more driving around, they again went to the same store and met Nathan Grice and Glen Roe. Dale left and Nathan Grice joined Bybee, who was still driving, Ashli and Dalton. The group decided to go to Jonathan Marshall's house to get more beer, and with Bybee still at the wheel, left for the Marshall house located in the country. While en route on a county road, Grice called Jonathan to say they were on their way and that Bybee was driving at about 120 miles per hour. Shortly thereafter, Marshall heard a "clankin" sound and the phone went dead. The wrecked car was found a short time later by Marshall and Roe. It was uncontroverted that Dalton Howell had been in the back seat with his girlfriend, Ashli. Shortly after arriving at the scene, Corporal Bush asked Grice who had been driving. Grice answered that Bybee had been the driver. Bybee then said no, he had not been driving. Grice then said he could not remember who was driving, but that he had been in the front passenger seat. After Corporal Wilde arrived, Grice told him that he had been in the front seat and could not remember who was driving. Two days later Grice said Bybee had been driving. Grice later changed his story to saying he was a front seat passenger but could not remember who was driving.

When the State sought introduction of the police report into evidence, Bybee's counsel objected saying that he did not have "an objection to the report *per se* " but to "the hearsay statements in the report, the same as like in medical records,

*et cetera.*" The objection was overruled, and counsel then argued the report frequently referred to Bybee as the driver; placed each of the four persons in specific seats; implicated alcohol as a contributing factor; referred to the speed limit; and referred to restrictions on Bybee's driver's license. The trial court overruled this objection stating the parties had stipulated that Sergeant Brown was an expert in accident reconstruction and was entitled to an opinion on ultimate facts.

*Edgell v. Leighty,* 825 S.W.2d 325, 328–29 (Mo.App.1992), is not a textbook example of how to apply the facts of the case at bar to the trial judge's decision to allow the expert to render an opinion. The pivotal issue in *Edgell* was whether the plaintiff driver had his turn signal on or whether he made an improper turn. The court determined that hearsay statements of witnesses could not be relied upon by the expert to determine the yes or no answer to that question. In the case at bar, the expert could reasonably infer one of the four people in the car had been the driver. It would seem that an expert in reconstruction could reasonably rely on statements of the three survivors that O'Dell and Dalton were in the back seat at the time of the accident. Grice said several times that Bybee was the driver, and his last rendition was that he, Grice, had been a front seat passenger, but did not know who was driving. Bybee said he was not driving. These facts on which Brown relied, statements given to investigating officers, are of the type reasonably relied upon by experts in the field in forming an opinion as to the subject of who was driving the car. *See.* § 490.065.3.

This is certainly not the first case where more than one person is in a one-car accident. If an accident expert, subject to cross-examination, whether in law enforcement or a civilian, could not render an

opinion where none of the occupants admitted to being the driver, then the law would be in a sorry state. While it is true that expert witnesses may not testify regarding the credibility of witnesses, it is permissible for expert witnesses to testify to specific facts that may discredit the testimony of another witness. *State v. Link*, 25 S.W.3d 136, 143 (Mo.2000). "An expert does not improperly comment on credibility simply because his or her testimony, if accepted, may cause the jury to conclude that a witness is not credible." *Messina v. Prather*, 42 S.W.3d 753, 764 (Mo.App.2001). In *Messina*, this court held that a police officer witness and accident reconstruction expert did not improperly comment on witness credibility by providing testimony that, if believed, would discredit one of the parties. *Id.* The trial court did not commit an abuse of discretion by allowing the report into evidence.

The additional points of error raised by Bybee do not warrant reversal.

His first point on appeal asserting that the Report, an exhibit, constituted an improper jury instruction is without merit, and was not preserved. His next point that the Report constituted improper bolstering is without merit and also is not preserved. In a similar vein, his next point that it was error to allow the jury's request to view the Report is not error. His next two points as to Rule 25.03 discovery violations and a *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) violation do not require a reversal. The next point, submitted on plain error review, that Jonathan's testimony as to his telephone conversation with Nathan, just before the accident, constituted improper hearsay, should be denied. The point as to insufficient evidence to find him the driver and warranting a discharge is meritless. His last points that the punishment was excessive and the denial of probation was an abuse of discretion do not merit relief.

Bybee and Grice were the only two who could have been driving. Highway Patrol Trooper Brown was stipulated as an expert, and was qualified and entitled to determine who was driving. To now proclaim Brown was not qualified to make such a decision based on the circumstantial evidence and the statements taken by him from the three remaining persons in the car, leaves the matter of who was the driver in equipoise. Section 490.065.3, RSMo 2000 addresses this situation. The accident scene investigation conducted here by a veteran law enforcement officer, revealed facts and data of a type reasonably relied upon by experts in the field and supported his opinion that Bybee was the driver.