CITY OF LAS VEGAS, NEVADA, Appellant, *v.* AUGUSTINE C. BUSTOS, JR., AND VAUGHNIE L. BUSTOS, AS TRUSTEES OF THE ACVLB FAMILY TRUST, RESPONDENTS.

No. 39252

August 27, 2003

75 P.3d 351

*Bradford R. Jerbic,* City Attorney, and *Philip R. Byrnes Jr.,* Deputy City Attorney, Las Vegas, for Appellant.

*Netzorg & Caschette* and *John M. Netzorg,* Las Vegas, for Respondents.

Before SHEARING, LEAVITT and BECKER JJ.

## OPINION

*Per Curiam:*

This is an appeal by the City of Las Vegas (City) from the district court's valuation of a house and residential lot (the property) owned by the ACVLB Family Trust. The City condemned the property in an eminent domain proceeding for the purpose of widening Alta Drive. After a bench trial, the district court ordered the City to compensate the ACVLB Family Trust, in the amount of $190,000.

At the time of condemnation, the property was classified under the Las Vegas general plan as R-4, medium to low density residential, and was located in an area north of Alta Drive that was zoned R-1, single family residential. Although the property was located on the edge of a small residential neighborhood, the Las Vegas medical district was located just across the street on the south side of Alta Drive. Also, a number of residences in the medical district had already been converted into professional offices.

After viewing the property and hearing conflicting testimony regarding the likelihood of a zoning change and the value of the property, both as a residence and as a professional office, the district court determined that obtaining a zoning change for use as an office was reasonably possible. Therefore, the district court determined that the property should be valued as if it were zoned for commercial use as a professional office because that would represent the highest and best use of the property. The district court set that value at $190,000, after taking into account the costs of converting the property from a residence to an office.

On appeal, the City argues that the district court erred in its valuation. The City contends that the district court was required to value the property based on the highest and best use that was legally permissible, and that use as a professional office was not legally permissible. The City asserts that the district court's finding that the City would probably grant a zoning change was erroneous because: (1) this court has held that the local government must defer to the general or master plan in making zoning changes and failure to do so has resulted in reversible error;[1] (2) the district court could not reasonably conclude that the City would grant a zoning change in noncompliance with its master plan;[2] and (3) the City's planner testified that such a change was extremely unlikely.

The Bustoses respond that the cases cited by the City are inapposite because they address enforcement of a master plan, not whether the district court may take into account the reasonable probability of rezoning in an eminent domain case. They argue that the very purpose of eminent domain proceedings is to provide the landowner with just compensation, premised on the highest and best use of the property, rather than the actual use, and that refusal to consider potential zoning changes has resulted in reversible error.[3] Further, given the neighborhood's evolution from a sleepy residential neighborhood to a busy thoroughfare and entrance to the

---

[1]*Enterprise Citizens v. Clark Co. Comm'rs,* 112 Nev. 649, 661-62, 918 P.2d 305, 312-13 (1996); *Nova Horizon v. City Council, Reno,* 105 Nev. 92, 96, 769 P.2d 721, 723-24 (1989).

[2]*Enterprise Citizens,* 112 Nev. at 661-62, 918 P.2d at 312.

[3]*See Sorenson v. State ex rel. Dep't of Hwys.,* 92 Nev. 445, 446-47, 552 P.2d 487, 488 (1976).

downtown business district, it was proper for the district court to consider the probability of a zoning change. Finally, the Bustoses assert that, at the very least, there was competing evidence as to the probability of a zoning change, and that it was within the district court's discretion to weigh the evidence and determine the credibility of the witnesses.

The landowner is entitled to just compensation for the government's taking of private property[4] and has the burden of establishing the value of land so taken.[5] Just compensation is determined by the property's market value "by reference to the highest and best use for which the land is available and for which it is plainly adaptable."[6] However, such use must be reasonably probable.[7] In general, the trier of fact may consider zoning restrictions permitting a viable economic use of the property in determining the property's value.[8] In fact, the district court should give "due consideration . . . to those zoning ordinances that would be taken into account by a prudent and willing buyer."[9]

We conclude that the district court properly considered the current zoning of the property, as well as the likelihood of a zoning change. The trier of fact may consider the effect of future rezoning or variances on the highest and best use of the condemned property when determining its value.[10]

---

[4]Nev. Const. art. 1, § 8.

[5]*State v. Pinson*, 66 Nev. 227, 237-38, 207 P.2d 1105, 1110 (1949).

[6]*County of Clark v. Alper*, 100 Nev. 382, 386-87, 685 P.2d 943, 946 (1984). ·

[7]*See County of Clark v. Buckwalter*, 115 Nev. 58, 63, 974 P.2d 1162, 1165 (1999) (stating that the "highest price" standard based on a condemned parcel's use as a casino was significantly different from the legislatively mandated "most probable" price standard because it was unlikely that the parcel could be used for a casino, and the "most probable" price was based on the probable use of the parcel as a retail or restaurant facility).

[8]*Alper*, 100 Nev. at 389, 685 P.2d at 948.

[9]*Id.* at 390, 685 P.2d at 948.

[10]We note that this is in accord with several other jurisdictions. *See, e.g., Martens v. State*, 554 P.2d 407, 409 (Alaska 1976) (stating that "if a zoning change would convert the land to its highest and best use, then the jury should consider the probability of such a change in its determination of whether the more profitable use was likely at the time of valuation"); *Greene v. Burns*, 607 A.2d 402, 407 (Conn. 1992) (stating that a reasonably probable change in zoning is a proper element to be considered in determining the value of condemned property); *Broward County v. Patel*, 641 So. 2d 40, 42 (Fla. 1994) (stating that the condemnee must demonstrate a reasonable probability that rezoning or a variance would be granted in the near future for it to be considered in the valuation of the condemned property); *Unified Govt. of Athens-Clarke v. Watson*, 577 S.E.2d 769, 770 (Ga. 2003) (stating that evidence of a

We note that there was undisputed evidence that most of the land surrounding the property had been converted to commercial use except for the area eight hundred feet from Tonopah Avenue to Deauville Drive, where the Bustoses' house was located. Augustine Bustos testified that, as of September 1996, Alta Drive was designated as the office-court-core gateway from the west in the downtown urban design master plan. Bustos also testified that the City had allowed commercial uses for other properties on the north side of Alta Drive. Bustos further testified that he bought the property with the intent of converting it to an office, despite the risk of condemnation proceedings. He thought he could convince the City to

highest and best use of the property that is precluded by current zoning is inadmissible unless the condemnee "show[s] that a change in zoning to allow the usage is probable, not remote or speculative, and is so sufficiently likely as to have an appreciable influence on the present market value of the property"); *Lombard Park District v. Chicago Title and Trust Co.,* 242 N.E.2d 440, 444 (Ill. App. Ct. 1968) (holding that it was proper for the trier of fact to consider the highest and best use of the property based on future zoning, where there was a reasonable probability of obtaining such zoning in the near future); *West Jefferson Levee D. v. Coast Quality,* 640 So. 2d 1258, 1274 (La. 1994) ("Another major factor . . . affecting the probability land could be put to a certain use in the not-too-distant future, is the requirement of a permit for or the impact of a zoning ordinance on the development of the property into its asserted highest and best use. Where there is no reasonable probability a permit for the necessary development could be obtained or that a change to a zoning classification allowing such development could occur in the reasonably foreseeable future, the asserted higher use may not be considered as the highest and best use of the property for purposes of market valuation because such use would be illegal."); *Stewart v. City of Baltimore,* 244 A.2d 231, 236-37 (Md. 1968) (holding that evidence of a reasonable probability of approval of a change in use of the realty by the planning commission was similar to evidence of a reasonable probability of a zoning change, and therefore, it was admissible); *Union Electric Company v. Saale,* 377 S.W.2d 427, 429 (Mo. 1964) (stating that, in an eminent domain proceeding, "[w]hen the land is *not available* for a certain use by reason of a zoning restriction, its suitability or adaptability for such use may be shown as affecting its value as of the time of the taking if, but only if, the evidence indicates a reasonable probability of a change in the zoning restriction in the reasonably near future"); *State by Com'r of Transp. v. Caoili,* 639 A.2d 275, 281 (N.J. 1994) (holding that evidence of zoning changes that a reasonable buyer and seller would take into consideration in an arm's length transaction was admissible after the trial court had determined that there was sufficient evidence that a zoning change was probable); *Masheter v. Kebe,* 359 N.E.2d 74, 77 (Ohio 1976) ("Although existing zoning restrictions necessarily constitute an important factor for the appraisal witnesses to consider in connection with the market value of the land, it must be recognized that, as a practical matter, the existing zoning regulation does not and may not control that market value of the property involved. If, in the opinion of an expert appraisal witness, an informed, willing purchaser would be presently agreeable to pay more than an amount justified under existing zoning, such evidence is admissible because it reflects upon the fair market value of the property."); *see also* Mark S. Dennison, *Probable Zoning Change as Bearing on Proof of Market Value in Eminent Domain Proceeding,* 40 Am. Jur. Proof of Facts 3d 396, 421-22 (1997); 4 Julius L. Sackman, *Nichols on Eminent Domain* § 12C.03[2] (rev. 3d ed. 2003).

straighten Alta Drive through vacant land rather than simply widen it, which would have required the City to condemn only seven properties instead of sixteen and would have bypassed his house. Bustos testified that he had experience with obtaining zoning variances in the area and that he thought he could obtain one for the subject property.

Gary Kent, the Bustoses' appraiser, testified that he appraised the property as an office conversion because he had concluded that that was the highest and best use of the property. He testified that he reached his conclusion because of the property's access to downtown Las Vegas; the reclassification of properties surrounding it as professional, commercial or high density residential; Alta Drive's high traffic volume; and Alta Drive's designated entry into the Union Pacific Development Area. Kent testified that, in his opinion, a buyer "would reasonably assume that he could get professional zoning on the property." Kent further testified that although the government would not be willing to rezone the property once condemnation proceedings had been initiated, he could not take into account the depreciation in value due to the condemnation proceedings under NRS 37.112(1).[11]

On the other hand, Chris Glore, a planning supervisor for the planning and development department, testified that several factors militated against rezoning the property for office use. First, he testified that the property faced a residential street and that it was the City's planning practice that nonresidential traffic not be introduced to residential streets to avoid disruption of the residents' quality of life. He further testified that, if rezoned, the property would be considered spot zoning because no other consistent zoning existed on that side of the street surrounding the property. He stated that the small lot size would not accommodate the parking requirements for office use. Finally, he testified that, to change the zoning, it would be necessary to amend the general plan. However, he conceded that spot zoning is "fairly common" and that, while the planning department may support one position, the city council frequently proceeds contrarily. Further testimony from Steve Anderson, an appraiser employed exclusively by the City, indicated that the consensus of four individual planners was that the property

---

[11]NRS 37.112(1) provides:

　　1.　Except as otherwise provided in subsection 2, if the property is subject to condemnation as a result of a public work or public improvement, any decrease or increase in the fair market value of the property before the date of valuation which is caused by:

　　(a) The public work or public improvement for which the property is acquired; or

　　(b) The likelihood that the property would be acquired for such a purpose,

must be disregarded when assessing the value of the property pursuant to NRS 37.110.

would be very difficult to rezone. Anderson stated that he would value the property as residential at $91,500.

This court has consistently held that the district court's findings of fact will not be disturbed on appeal if they are supported by substantial evidence.[12] The district court determined that a reasonable and prudent buyer would conclude that he or she could likely obtain a zoning change, given the character of the neighborhood, the high volume of traffic on Alta Drive, and the surrounding properties. We conclude that substantial evidence supported the district court's finding of fact.

Accordingly, we affirm the judgment of the district court.

---

[12]*See Pandelis Constr. Co. v. Jones-Viking Assoc.,* 103 Nev. 129, 130, 734 P.2d 1236, 1237 (1987); *Hobson v. Bradley & Drendel, Ltd.,* 98 Nev. 505, 506-07, 654 P.2d 1017, 1018 (1982).