CITY OF NORTH LAS VEGAS, APPELLANT/CROSS-RESPONDENT, v. MARILYN J. ROBINSON, AND HER SPOUSE IF ANY; AND MARY KAY ROBINSON, AS TRUSTEE OF THE MARY KAY LIVING TRUST, DATED 12/10/73, RESPONDENTS/ CROSS-APPELLANTS.

No. 42419

May 25, 2006                                   134 P.3d 705

[Rehearing denied July 6, 2006]

*Santoro, Driggs, Walch, Kearney, Johnson & Thompson* and *Kirby C. Gruchow Jr.* and *Gregory J. Walch*, Las Vegas, for Appellant/Cross-Respondent.

*William E. Cooper Law Offices* and *William E. Cooper Jr.*, Las Vegas, for Respondents/Cross-Appellants.

## OPINION

By the Court, GIBBONS, J.:

Appellant and cross-respondent City of North Las Vegas (CNLV) sought to condemn part of a larger parcel of undeveloped private property, owned by the Robinsons,[2] for a road-widening project. The parties disagreed on how the jury should value the condemned portion. We conclude that the district court's valuation instructions improperly required the jury to ignore the highest and best use of the entire property. Accordingly, we reverse the judgment below and remand this matter for a new trial.

[2]Marilyn J. Robinson and Mary Kay Robinson, as Trustee of the Mary Kay Robinson Living Trust.

## FACTUAL BACKGROUND

The Robinsons own approximately 77.85 acres of undeveloped property on Craig Road in the City of North Las Vegas. Using its eminent domain power, CNLV sought to condemn a 1.54-acre strip of the property for a project to widen Craig Road. CNLV brought suit against the Robinsons to effectuate the condemnation and to determine just compensation for the condemned portion.

CNLV argued to the district court that absent a taking, the condemned portion of the property would be subject to a dedication to CNLV if the property were developed commercially, which both parties agreed was the property's highest and best use. Accordingly, because a valuation based upon highest and best use of the portion of the property actually taken would result in no monetary award, CNLV requested that the court instruct the jury to value the condemned portion under uses that would not trigger the dedication requirement. Those uses, according to CNLV, would be open space, fencing, directional signage, and the right to remove trespassers.

The Robinsons opposed limiting the value of the condemned portion based on uses that would not trigger the dedication requirement. They argued that CNLV's method of valuation improperly commingled dedication law with eminent domain law.

The district court agreed with CNLV and concluded that the condemned portion would be subject to a dedication if the property were developed commercially.[3] Therefore, the court issued Jury Instruction No. 17, which read in part, "you must determine the value of the condemned parcel in the before condition based upon only those uses to which the property can be put without obtaining governmental approvals that would trigger the dedication." This instruction directed the jury to ignore evidence of the highest and best use of the whole parcel and instead to focus solely on the value of the condemned portion based on limited uses.

During trial, the Robinsons' expert appraiser testified that the highest and best use of the property was commercial. Based on that use, the appraiser valued the Robinsons' entire property at $8 per square foot prior to the taking. At approximately 67,060 square feet, the value for the condemned portion was $536,480.[4] The

---

[3]Neither party challenges on appeal the district court's determination that CNLV's dedication requirement would be constitutional if the property were developed commercially, without the taking. We therefore do not reach that issue in this opinion.

[4]We note that the Robinsons' expert testified that the value of the condemned portion was $536,180. We assume, however, that either the expert misspoke or the record contains a typographical error because 67,060 square feet, valued at $8 per square foot, yields a total value of $536,480. The expert offered no additional evidence that would alter the calculation.

Robinsons' appraiser also testified that other comparable properties were purchased without any modification in price due to a dedication requirement and that the purchasers of those properties bought them on a gross basis. As such, they paid for the portion that would be dedicated at the same rate as the rest of the property. The Robinsons' appraiser did not testify as to the value of the condemned property based on uses that would not trigger a dedication to CNLV.

CNLV's appraisal expert agreed that the highest and best use for the Robinsons' property was commercial. Unlike the Robinsons' appraiser, however, CNLV's appraiser testified that the condemned portion of the property would be valueless because that portion would be dedicated to CNLV if the property were developed commercially. Therefore, a prudent buyer would assign no value to that portion. As a result, CNLV's appraiser valued the property based on uses that would not trigger a dedication: open space, fencing, directional signage, and the right to remove trespassers. He testified that valuation under such uses was the only way to compensate the Robinsons. Otherwise, the Robinsons, as noted, would receive nothing. To arrive at a value under the four restricted uses, the appraiser began with a residential value for the condemned portion of $150,920. He then discounted the residential value by 90 percent, based on properties similarly restricted to the four uses described above. The final value that CNLV's appraiser ascribed to the condemned portion was $15,000.[5] The jury returned a verdict, awarding just compensation to the Robinsons for the condemned portion of their property in the amount of $151,000.[6]

CNLV appeals, arguing that the jury ignored Jury Instruction No. 17 by valuing the property at something other than $15,000, the value of the property based on the restricted uses. According to CNLV, its appraiser did not give a range of values and the Robinsons' appraiser did not give evidence of value based on the restricted uses. Therefore, CNLV argues, the jury should have returned a verdict of $15,000.[7] In reply, the Robinsons contend that because the jury was free both to weigh the testimony of CNLV's appraiser and to reject the appraiser's discount rate, the jury did

---

[5]A precise calculation resulting from a 90 percent reduction of $150,920 would yield a value of $15,092 for the condemned portion. CNLV's expert then rounded the value to $15,000.

[6]The jury's verdict was for $179,100. Of this sum, $28,100 represented compensation to the Robinsons for an easement granted to CNLV and is not a subject of this appeal.

[7]CNLV also challenges on appeal the district court's award of costs to the Robinsons. However, because we are remanding this case for a partial new trial, the district court will determine costs. We therefore do not reach the costs issue in this appeal.

not disregard Jury Instruction No. 17. They also contend that the amount the jury awarded was within the range of evidence presented at trial.

The Robinsons also cross-appeal, challenging the propriety of Jury Instruction No. 17. They argue that the instruction caused the jury to improperly value the condemned portion in contravention of Nevada law. Therefore, according to the Robinsons, the district court's use of Jury Instruction No. 17 constitutes reversible error. This argument embodies the central issue of this case: whether Jury Instruction No. 17 properly instructed the jury how to value the condemned portion of the Robinsons' property under Nevada law.

## DISCUSSION

We agree with the Robinsons' argument in their cross-appeal. Jury Instruction No. 17 is contrary to proper valuation of a condemned portion of property under Nevada law. By directing the jury to value the condemned portion based solely on the limited uses to which the portion could be put without triggering a dedication to CNLV, Jury Instruction No. 17 caused the jury to ignore the highest and best use of the entire parcel and to improperly sever the condemned portion from the whole parcel.

The Nevada and United States Constitutions provide for a right to just compensation when private property is taken for public use.[8] We have held previously that "[j]ust compensation is determined by the property's market value 'by reference to the highest and best use for which the land is available and for which it is plainly adaptable.' "[9]

To ascertain market value when a government entity uses its eminent domain power to condemn a portion of a larger parcel of property, a fact-finder should determine value of the portion in relation to the value of the whole property based on the whole property's highest and best use.[10] Therefore, it is improper for a

---

[8]Nev. Const. art. 1, § 8, cl. 6.; U.S. Const. amend. V.

[9]*City of Las Vegas v. Bustos*, 119 Nev. 360, 362, 75 P.3d 351, 352 (2003) (quoting *County of Clark v. Alper*, 100 Nev. 382, 386-87, 685 P.2d 943, 946 (1984)).

[10]*United States v. Miller*, 317 U.S. 369, 376 (1943) ("If only a portion of a single tract is taken the owner's compensation for that taking includes any element of value arising out of the relation of the part taken to the entire tract."); *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999); *United States v. 47.14 Acres of Land, More or Less*, 674 F.2d 722, 725 (8th Cir. 1982).

fact-finder to focus solely on the condemned portion when determining its value.[11]

When calculating market value, the fact-finder must look to "the most probable price which a property would bring in a competitive and open market under the conditions of a fair sale."[12] To determine "most probable price," this court has permitted the trier of fact to consider evidence of land-use restrictions that would influence a prudent purchaser when purchasing the condemned property. For example, a fact-finder may consider certain zoning restrictions permitting viable economic uses of the property because those zoning restrictions may limit the property's highest and best use.[13] We have also permitted the trier of fact to consider the effect that future zoning or variances may have on the condemned property's highest and best use when there is evidence that a prudent purchaser would conclude that he or she would likely obtain a zoning change.[14] Evidence of such land-use restrictions, however, is not always proper for determining the value of condemned property.

A court may not admit evidence of a land-use restriction that diminishes the value of a condemned portion of a larger parcel by focusing only on the limited uses to which the condemned portion could be put under the restriction, without reference to the highest and best use of the whole parcel.[15] In *County of Clark v. Alper*, the county had taken a portion of a larger piece of the Alpers' property to widen a road.[16] The Alpers filed an inverse condemnation suit to recover the value of the condemned portion.[17] At trial, the district court permitted the county to present evidence that (1) because the portion fell completely within an area demarcated in the

---

[11]*See* NRS 37.110(2) (treating the condemned portion and the larger parcel as a whole unit for purposes of calculating damages to the larger parcel resulting from severing the condemned portion); *Alper*, 100 Nev. at 389-90, 685 P.2d at 947-49 (reversing the district court's determination that evidence was admissible to show that the condemned portion of a larger parcel had only nominal value).

[12]NRS 37.009(6); *see also County of Clark v. Buckwalter*, 115 Nev. 58, 61 & n.3, 974 P.2d 1162, 1164 & n.3 (1999).

[13]*See Bustos*, 119 Nev. at 362, 75 P.3d at 352.

[14]*See id.* at 362, 365, 75 P.3d at 352, 354.

[15]*See Alper*, 100 Nev. at 389-90, 685 P.2d at 947-49.

[16]*Id.* at 386 n.1, 685 P.2d at 946 n.1. This court had rendered an earlier opinion in *Alper*, which explicitly indicates that the condemned property was a portion of a larger parcel. *Alper v. Clark County*, 93 Nev. 569, 571, 571 P.2d 810, 811 (1977).

[17]100 Nev. at 385, 685 P.2d at 945-46.

county's general plan for future road widening and (2) because the county would not likely authorize a permit to develop the portion, the portion had only nominal value.[18] Therefore, the district court permitted the jury to value the condemned portion based on its limited uses as an isolated piece of property, rather than on the highest and best use of the whole parcel of which the condemned portion was a part. We concluded that the district court erred by admitting the evidence.[19]

Similarly, Jury Instruction No. 17 directed the jury to value the condemned portion of the Robinsons' property by focusing exclusively on the uses to which the portion could be put without triggering a dedication. At trial, CNLV's appraiser arrived at a value for the condemned portion by beginning with a residential use of the 1.54-acre strip and discounting it by 90 percent. If not for the dedication requirement, CNLV's appraiser would have valued the entire property (the condemned portion plus the remainder) based on commercial use as the highest and best use of the property. By focusing exclusively on the condemned portion and the limited uses to which it could be put because of the dedication requirement, CNLV's valuation method and the resulting Jury Instruction No. 17 are inconsistent with the requirements of just compensation under Nevada law.

CNLV relies primarily on California authority to support Jury Instruction No. 17. In *Contra Costa County v. Lone Tree Investments*, the county sought to condemn, for a flood control project, a strip of land owned by Lone Tree.[20] Typically, the county acquired such land by requiring property owners to dedicate the necessary portion as a condition to development.[21] However, Lone Tree's property remained undeveloped at the time the county sought condemnation. At trial, both parties' appraisers testified that the highest and best use of the property was commercial. The county's appraiser also testified on the property's value based on agricultural use, a use that would not trigger the county's dedication requirement. The trial court refused to give the county's proposed jury instruction, which would have instructed the jury that the highest and best use of the property was agricultural due to the dedication requirement. The county then appealed.[22]

The California Court of Appeal concluded that the trial court had erred by not giving the county's requested instruction.[23] Specifically, the court concluded, ''When there is a reasonable probabil-

---

[18]*Id.* at 389, 685 P.2d at 947-48.

[19]*Id.* at 390, 685 P.2d at 948.

[20]9 Cal. Rptr. 2d 326, 327 (Ct. App. 1992).

[21]*Id.*

[22]*Id.* at 327-28.

[23]*Id.* at 331.

ity that the public agency would require dedication of the take as a condition of development, the take should be valued based on the use that can be made of the property in its undeveloped state."[24]

We reject the holding in *Contra Costa* as inconsistent with a proper determination of just compensation. *Contra Costa* valued the condemned portion based on limited uses that would not trigger a dedication to the county, rather than based on the highest and best use of the whole parcel. Therefore, CNLV's reliance on *Contra Costa* is misplaced.

### CONCLUSION

We conclude that the district court erred by giving Jury Instruction No. 17, which, like *Contra Costa*, directed the jury to ignore the highest and best use of the Robinsons' whole property when valuing the condemned portion. Consequently, we reverse the district court's judgment and order and remand this case to the district court for a new trial to determine the value of the condemned portion of the Robinsons' property in accord with this opinion.

ROSE, C. J., BECKER, MAUPIN, DOUGLAS and HARDESTY, JJ., concur.