Debora M. PALIZZI; Gloria A. Bennett; and Palizzi & Son, Inc., a Colorado Corporation; Petitioners

v.

CITY OF BRIGHTON, a municipal corporation of the State of Colorado, Respondent.

No. 08SC1026.

Supreme Court of Colorado, En Banc.

March 22, 2010.

Rehearing Denied April 26, 2010.*

* Chief Justice Mullarkey, Justice Martinez and Justice Coats would grant the Petition.

Fowler, Schimberg & Flanagan, P.C., Timothy J. Flanagan, Katherine T. Eubank, Denver, Colorado, Attorneys for Petitioners.

Murray Dahl Kuechenmeister & Renaud LLP, Patrick Wilson, Denver, Colorado, Mehaffy Brubaker & Ernst LLC, Margaret R. Brubaker, Brighton, Colorado, Attorneys for Respondent.

Colorado Municipal League, Erin E. Goff, Denver, Colorado, Attorneys for Amicus Curiae Colorado Municipal League.

John W. Suthers, Attorney General, Megan Paris Rundlet, Assistant Attorney General, Denver, Colorado, Attorneys for Amicus Curiae Colorado Department of Transportation.

Justice HOBBS delivered the Opinion of the Court.

In this eminent domain action for property it desired for road improvements, the City of Brighton ("Brighton") condemned approximately 0.8 acres of agricultural land owned by Debora M. Palizzi, Gloria A. Bennett, and Palizzi & Son, Inc. (collectively "the Palizzis"). A jury awarded $204,387.15 as just compensation for the taken property, based on its highest and best use being for commercial and residential development. Brighton valued the property at $35,250. Brighton contends that the same strip of property would have to be dedicated to it should the entire Palizzi property be annexed and the use changed for commercial and residential development. However, the Palizzis were not seeking to develop any of the property when Brighton initiated its condemnation action. We granted certiorari to determine whether valuation evidence in the condemnation proceeding should be limited, as Brighton argues, to the property's existing use when dedication of the road improvement strip would be required as a condition for future development of the entire property.[1]

In *City of Brighton v. Palizzi*, the court of appeals held that, where condemned undeveloped land would have to be dedicated as a condition of development, the land must be valued based only on uses to which the property could be put in the absence of rezoning or development approval. 214 P.3d 470, 476 (Colo.App.2008). The court of appeals further ruled that the trial court abused its discretion in admitting evidence that relied on the entire property's potential for development; it determined that the trial court should have granted Brighton's motion in limine to exclude such evidence. We disagree and reverse the court of appeals' judgment.

We agree with the trial court. In accordance with our expansive evidentiary rules for property valuation in condemnation cases, we hold that all evidence relevant to the determination of the present market value of condemned property is admissible, including evidence of the most advantageous potential future use of the entire property, even if the condemned property would need to be dedicated as part of annexation and rezoning of the entire property in the future. Accordingly, the trial court did not err in denying Brighton's motion in limine.

### I.

In 2005, Brighton sought to widen and improve Bromley Lane into a four-lane, divided street with turn lanes and a raised median. In order to complete these improvements, Brighton needed to acquire an additional seventy-foot-wide strip of land from properties on the south side of Bromley Lane. The Palizzis own two of these parcels

---

1. We granted certiorari on the following issue: Whether the court of appeals erred when it held that, where dedication is required, evidence valuing the portion that would be dedicated as part of the whole parcel in accordance with the parcel's potential future use as commercial property is inadmissible.

(the "entire property"). The parcels are located in unincorporated Adams County, adjacent to the Brighton city limits, and contiguous to each other. One parcel is 19.77 acres; the other is 34 acres. Both are zoned Adams County Agricultural A–1 and are currently used for agricultural purposes. The entire property, consisting of these two parcels, is flat and uniform.

Both parties agree that the entire property's most advantageous use was for commercial and residential development. However, an intergovernmental agreement between Brighton and Adams County prohibits the development or rezoning of the property unless it is annexed by Brighton. The parties do not dispute that the same agreement requires the landowner seeking annexation to dedicate the same seventy-foot-wide strip of land bordering Bromley Lane. The Palizzis have not sought or obtained any of the required approvals for development and contend that they had no specific plans to sell or develop the land when Brighton initiated the condemnation.

The entire property was originally part of the Palizzi family farm, which consisted of approximately 120 acres with boundaries established by Bromley Lane to the north, Sable Boulevard to the west, and Fulton Ditch to the south and east. The property lies between two other former Palizzi farm parcels along Bromley Lane that have been subdivided and developed.

In 1999, the estate of Margaret Palizzi and Palizzi & Son, Inc. sold 15.66 acres of the northwest corner of the farm (the "Palizzi I parcel"), at the corner of Bromley Lane and Sable Boulevard, to a commercial developer. The developer bought the property for $2,673,200 ($3.92 per square foot), conditioned upon the developer obtaining all necessary approvals for the contemplated development, including annexation of the property by Brighton and rezoning of the property from agricultural to commercial. The conditions of the sale were satisfied; however, Brighton required the developer to dedicate fee title to a strip of land for the widening of

Bromley Lane. In 2002, to accommodate this dedication requirement, the developer purchased an additional 1.3–acre parcel from the Palizzis for $4.00 per square foot, approximately the same price as the initial purchase. The Palizzi I parcel was developed into a shopping center anchored by a King Soopers supermarket.

In 2002, approximately 40 acres of the southeast corner of the Palizzi farm was annexed to Brighton (the "Palizzi II parcel").[2] Brighton required the owner, as a condition of the annexation, to dedicate a seventy-foot-wide strip of the property bordering Bromley Lane. In July 2005, the owner sold the agriculturally-zoned parcel to a developer for $2,456,630 ($1.42 per square foot). The developer subdivided and rezoned the property, and, in November 2006,[3] sold the western 10.9 acres (rezoned for commercial use) for $8.44 per square foot. The remainder of that property, a little over 28 acres, was rezoned multi-family residential.

In the present action, Brighton sought fee title to the northern seventy feet of property situated between the Palizzi I and Palizzi II parcels, amounting to approximately 0.8 acres, and a permanent slope easement on another ten feet, amounting to approximately 0.1 acres, to widen Bromley Lane. On February 1, 2006, the Palizzis agreed to allow Brighton to take possession of the road improvement strip to complete the project, pending an anticipated condemnation action to determine just compensation for the strip. The date of this agreement is the date employed for valuation purposes. This action commenced to determine the market value of the road improvement strip at the time of the condemnation.

Both parties hired experienced appraisers to value the condemned seventy-foot-wide strip. Both appraisers relied on the comparable sales or market data approach and agreed that the highest and best use for the entire property was mixed-use—commercial and residential—development. However, the appraisers reached different valuations.

2. Another member of the Palizzi family who is not a party to this action owned this parcel.

3. The sale of the rezoned portion of the Palizzi II parcel occurred nine months after the valuation date in this condemnation action.

The Palizzis' appraiser valued the property at approximately \$4.23 per square foot, taking account of the entire property's development potential and discounting the costs associated with development—including costs such as annexation, rezoning, and platting. In doing so, the Palizzis' appraiser considered the dedication requirement in reaching his valuation and testified that developers will consider a dedication requirement as part of their development costs when determining what to pay for a parcel of raw land. The Palizzis' appraiser based his valuation on multiple comparable sales, including the 1999 sale of the then-undeveloped Palizzi I parcel (at approximately \$4.00 per square foot) and the 2006 sale of the rezoned portion of the Palizzi II parcel (at approximately \$8.44 per square foot), which had already met Brighton's dedication requirement.

In contrast, Brighton's appraiser valued the property at \$1.25 per square foot, relying on comparable sales of agricultural land in Brighton, including the 2005 sale of the agriculturally-zoned Palizzi II parcel (at approximately \$1.42 per square foot).

Brighton filed a pretrial motion in limine to exclude most of the Palizzis' evidence concerning the value of the condemned property. Brighton argued that the Palizzis' valuation ignored the fact that the road improvement strip Brighton condemned would have to be dedicated as a condition of annexation and rezoning. Brighton contended that, in order for the most advantageous use of the property—mixed-use development—to come to fruition, the landowner would have to dedicate this same strip of property to Brighton. Accordingly, Brighton argued that the Palizzis' evidence should be limited to valuation evi-

dence based upon the property remaining in its existing agricultural zoning and use.

Rather than precluding admission of any evidence relating to the entire property's potential for development, the trial court denied Brighton's motion in limine, ruling that the dedication requirement went to the weight of the valuation evidence. The jury rendered a verdict awarding the Palizzis compensation of \$204,387.15, valuing the condemned property at \$5.50 per square foot.[4]

■ Brighton appealed the judgment to the court of appeals, arguing that the district court erred in denying its pretrial motion to exclude testimony concerning the value of the condemned property. The court of appeals adopted a rule from a series of California Courts of Appeal decisions, holding as a matter of law that, when undeveloped condemned property would have to be dedicated as a condition of development, the property must be valued based only on uses to which it could be put absent rezoning or development approval. Accordingly, our court of appeals held that the district court abused its discretion by admitting evidence that considered the entire property's potential for development.[5] We disagree and reverse the court of appeals.

## II.

■ In accordance with our expansive evidentiary rules for property valuation in condemnation cases, we hold that all evidence relevant to the determination of the present market value of condemned property is admissible, including evidence of the most advantageous potential future use of the entire property, even if the condemned property would need to be dedicated as part of annex-

---

4. The record shows that the square-foot valuation settled on by the jury is close to the square-foot value of the 1999 sale of the Palizzi I parcel of \$3.92 time adjusted to \$5.84.

5. The court of appeals phrased its holding somewhat differently: that "the district court abused its discretion by admitting evidence that valued the entire parcels as *developed mixed-use,* and valued the strip in accordance with the average per square foot value of the entire parcels *as so developed." Palizzi,* 214 P.3d at 476 (emphasis added). This statement mischaracterizes established law regarding valuation in condemnation

proceedings. It is well-established that the valuation of property in condemnation proceedings is based on the most advantageous use of the property, taking into account the reasonable probability of future development, but not basing the valuation on that probable development as an accomplished fact. *Dep't of Highways v. Schulhoff,* 167 Colo. 72, 76–77, 445 P.2d 402, 404–05 (1968). The Palizzis' valuation evidence accounted for costs associated with development and thus did not value the parcels as if the development had already occurred.

ation and rezoning of the entire property in the future.

## A. Standard of Review

■ The court of appeals ruled as a matter of law that valuation in this case is limited to the current agricultural use of the property, because the road improvement strip would have to be dedicated should the landowner seek annexation and rezoning for development in the future. We review such a legal conclusion de novo. *E–470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 22–23 (Colo.2000).

■ This case comes before us in the context of the district court's denial of Brighton's motion in limine. The Colorado Rules of Evidence strongly favor admission of material evidence. *Id.* at 23. A trial court has substantial discretion in deciding questions concerning the relevance and admissibility of evidence. *Id.* Thus, we will not disturb a trial court's evidentiary ruling unless it constitutes an abuse of discretion. *Id.* A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

## B. Colorado Condemnation Valuation Law

■ Article II, section 15 of the Colorado Constitution provides that "[p]rivate property shall not be taken or damaged, for public or private use, without just compensation." Thus, when a government entity condemns private property for a public purpose, it must fairly compensate the property owner. The property owner is entitled to recover an amount equal to the loss suffered by reason of the taking. § 38–1–114, C.R.S. (2009); *455 Co.*, 3 P.3d at 23.

■ Just compensation is measured by the actual fair market value of the property, taking into consideration its most advanta-

geous use at the time of the condemnation. § 38–1–114; *Dep't of Highways v. Schulhoff*, 167 Colo. 72, 75–76, 445 P.2d 402, 404 (1968). The purpose of the valuation proceeding is to replicate the marketplace, and thus the fact finder is tasked with determining how much a willing buyer would pay for the property if the owner had voluntarily offered it for sale. *Schulhoff*, 167 Colo. at 76, 445 P.2d at 404; *Goldstein v. Denver Urban Renewal Auth.*, 192 Colo. 422, 425, 560 P.2d 80, 83 (1977). In so doing, the fact finder may consider any competent evidence that affects the present market value of the land which a prospective seller or buyer would consider. *Goldstein*, 192 Colo. at 425, 560 P.2d at 83. The admissibility of evidence for property valuation is expansive, rather than restrictive. *City of Westminster v. Jefferson Ctr. Assocs.*, 958 P.2d 495, 498 (Colo.App.1997); *City of Aurora v. Webb*, 41 Colo.App. 11, 14, 585 P.2d 288, 291 (1978).

■ In a partial taking case, we value the condemned portion as a part of the entire property so long as the property is sufficiently uniform.[6] *Jefferson Ctr. Assocs.*, 958 P.2d at 500–02; Leslie A. Fields, *Colorado Eminent Domain Practice* § 9.6 (2007); *see also City of N. Las Vegas v. Robinson*, 122 Nev. 527, 134 P.3d 705, 708 (2006). This rule is designed to protect the landowner, and thus it applies when the land sought to be condemned is of greater value when considered part of the whole rather than as an independent parcel. *Jefferson Ctr. Assocs.*, 958 P.2d at 501, 502. Whether the property is sufficiently uniform is a question of fact for the trial court. *Id.* at 502.

■ Thus, generally speaking, evidence of the value of the condemned portion as a part of the whole is admissible and should be evaluated by the fact finder when determining just compensation. *Id.* The court of appeals concluded in *Jefferson Center Associates*, consistent with our cases, that "evi-

---

6. Other jurisdictions determine the compensation owed to the property owner in a partial taking under the "before and after rule." This involves determining the value of the entire property prior to the taking and subtracting the value of the remaining property after the taking. *See* 4 *Nichols on Eminent Domain* § 13.01[17] (3d ed.). California courts, upon which the court of ap-

peals relied for its holding, have held that the portion taken may *not* be valued as part of the whole unless each square foot of the parcel has the same value. *See Contra Costa County Flood Control & Water Conservation Dist. v. Lone Tree Invs.*, 7 Cal.App.4th 930, 934, 9 Cal.Rptr.2d 326 (1992).

dence of the value of the part taken as a part of the whole is admissible along with other evidence and should be accorded so much weight as it deserves by the fact-finder." *Id.* We agree. This principle accords with the settled rule that a jury may consider any evidence which would be considered by a prospective buyer or seller as tending to affect the present market value of the land. *See Goldstein,* 192 Colo. at 425, 560 P.2d at 83; *Webb,* 41 Colo.App. at 14, 585 P.2d at 291.

■ The jury may consider the reasonable probability of a future use, including rezoning and development, to the extent that it relates to the present market value of the property. *Stark v. Poudre Sch. Dist. R–1,* 192 Colo. 396, 398, 560 P.2d 77, 79 (1977); *Schulhoff,* 167 Colo. at 76, 445 P.2d at 404. In so doing, however, the jury may not consider the future use as an accomplished fact. *Schulhoff,* 167 Colo. at 77, 445 P.2d at 405. "[T]he question is, taking all things into consideration, what is the present market value, not what will or may be its value later on account of some use to which it may be put in the future." *Id.* at 76, 445 P.2d at 404.

■ When considering the effect of a probable future use on the market value of the property, the jury may also consider the costs of achieving that future use. *Webb,* 41 Colo.App. at 14–15, 585 P.2d at 291–92 (holding that, when a probability of rezoning to a

higher use exists and the property owner has introduced evidence of the sales price of property that enjoys the higher use, the condemning governmental entity may introduce evidence to show the costs and expenses that would necessarily be incurred to obtain the higher use); *United States v. 158.24 Acres of Land,* 696 F.2d 559, 564 (8th Cir.1982) ("Account must be taken of all factors which would be considered by a prospective purchaser," including costs such as loss of land for streets and utility easements, platting and surveying expenses, and road improvements.); 4 *Nichols on Eminent Domain* § 12B.14[1][a] (3d ed.) ("[I]f evidence is offered as to developed value, consideration must be given to the cost of developing that value."); *see also Goldstein,* 192 Colo. at 425–26, 560 P.2d at 83–84; *Wassenich v. City & County of Denver,* 67 Colo. 456, 464, 186 P. 533, 536–37 (1919).[7]

■ Local governments often require developers to dedicate portions of their property, or pay a fee in lieu of the property dedication, as a condition of rezoning or development approval.[8] A dedication requirement is similar to the many other costs that a prospective buyer will consider when determining whether to buy an undeveloped parcel and at what price, including the costs of street and utility easements, planning and construction, and obtaining the necessary development approvals.[9]

7. *Wassenich* and *Goldstein* dealt with the admissibility of evidence of comparable sales to show the condemned property's value. In both cases, we held that comparable sales were admissible, even though they differed from the condemned property in some aspects. *Goldstein,* 192 Colo. at 426–27, 560 P.2d at 84; *Wassenich,* 67 Colo. at 464–65, 186 P. at 536–37.

In *Goldstein,* the trial court was charged with assigning a value to condemned undeveloped property. 192 Colo. at 424, 560 P.2d at 82. The landowner's appraiser relied on a comparable sale of developed property for the valuation of the undeveloped parcel, discounting the sale by the amount of demolition costs. *Id.* We held this evidence was admissible, reasoning that the opposing party may present to the jury evidence of the differences between the properties and that the *jury may consider any and all differences, facts, or circumstances affecting the value of the condemned property. Id.* at 426, 560 P.2d at 84.

8. Development exactions, such as dedication requirements, are permitted under the U.S. Con-

stitution, without compensation, provided they satisfy a two-part test: (1) there must be an "essential nexus" between the legitimate government interest and the exaction demanded; and (2) there must be "rough proportionality" between the government interest and the required dedication. *Wolf Ranch, LLC v. City of Colorado Springs,* 220 P.3d 559, 563 (Colo.2009) (citing *Nollan v. Cal. Coastal Comm'n,* 483 U.S. 825, 837, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) and *Dolan v. City of Tigard,* 512 U.S. 374, 391, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994)); *see also* § 29–20–203, C.R.S. (2009).

9. A dedication requirement is similar to a utility or street easement requirement in that both demand the landowner give up property rights in order to develop. A local government is also permitted to require the developer to pay a fee in lieu of the dedication requirement, and thus a dedication requirement may very well be a monetary cost that the developer must anticipate.

## C. The Effect of Dedication Requirements on Valuation Proceedings

We have not previously determined the effect of a future dedication requirement on a present condemnation valuation proceeding. However, both Nevada and California courts have squarely addressed this issue, reaching different results.

The California Courts of Appeal have adopted a broad preclusive rule limiting valuation evidence to the condemned property's existing use when that property will be subject to a dedication requirement. In *Contra Costa Flood Control & Water Conservation District v. Lone Tree Investments*, the flood control district condemned 4.928 acres of land for flood control purposes. 7 Cal. App.4th 930, 931–32, 9 Cal.Rptr.2d 326 (1992). The portion taken was part of an undeveloped 38.42 acre parcel. *Id.* at 932, 9 Cal.Rptr.2d 326. The landowner argued that the highest and best use of the entire property was for commercial development. *Id.* The flood control district agreed but argued that, because the dedication requirement precluded the use of the condemned portion of the property for commercial development, the portion should be valued at its current agricultural use. *Id.* at 932–33, 9 Cal.Rptr.2d 326. The court agreed with the flood control district, holding that, "[w]hen there is a reasonable probability that a public agency would require dedication of the take as a condition of development, the take should be valued based on the use that can be made of the property in its undeveloped state." *Id.* at 937, 9 Cal.Rptr.2d 326; *see also City of Fresno v. Cloud*, 26 Cal.App.3d 113, 123, 102 Cal.Rptr. 874 (1972) (stating that, on remand, the court must determine "the value of the frontage strips taken on the basis of the highest and best uses permitted by the existing zoning, because this land could never be used for any other purpose").

The Nevada Supreme Court reached a different conclusion. In *Robinson*, the city condemned a 1.54–acre strip of 77.85 acres of undeveloped property for a road widening project. 134 P.3d at 706. The city argued that, because the condemned portion would be subject to a dedication requirement if developed commercially, the portion should be valued according to uses that would not trigger the dedication requirement. *Id.* The landowners argued that the highest and best use of the property as a whole was commercial and that the city's argument improperly comingled dedication and condemnation law. *Id.* The trial court instructed the jury to determine the value of the condemned property based upon uses to which it could be put without obtaining governmental approvals that would trigger the dedication requirement. *Id.* The Nevada Supreme Court reversed, holding that the jury instruction caused the jury to ignore the highest and best use of the entire parcel and to improperly value the condemned portion as if it were severed from the entire property. *Id.* at 707.

Other jurisdictions have held that dedication requirements are relevant to market value but have not gone so far as to limit evidence only to existing undeveloped uses. *E.g., State ex rel. Dep't of Transp. v. Lundberg*, 312 Or. 568, 825 P.2d 641, 645 (1992); *State ex rel. Mo. Highway & Transp. Comm'n v. Modern Tractor & Supply Co.*, 839 S.W.2d 642, 653–54 (Mo.Ct.App.1992); *State ex rel. Mo. Highway & Transp. Comm'n v. Sturmfels Farm Ltd.*, 795 S.W.2d 581, 587–88 (Mo.Ct.App.1990); *Dep't of Pub. Works & Bldgs. v. Exch. Nat'l Bank of Chicago*, 40 Ill.App.3d 623, 1 Ill.Dec. 250, 356 N.E.2d 376, 385–86 (1976).

## D. Application to this Case

The court of appeals' holdings—that the condemned seventy-foot-wide road improvement strip must be valued at its existing use and that the entire property's most advantageous potential future use may not be considered by the fact finder—contravene Colorado's established rules of valuation. The jury is tasked with determining the present market value of the condemned property, taking into consideration the entire property's reasonably probable potential future use even if such potential future use would trigger a dedication requirement. *See* § 38–1–114; *Schulhoff*, 167 Colo. at 75–76, 445 P.2d at 404. The dedication requirement, instead of triggering a preclusive evidentiary rule, goes to the weight of the valu-

ation evidence before the jury. Thus, we reject California's preclusive approach to valuation evidence in favor of Nevada's inclusive approach, and entrust the determination of just compensation to the fact finder.[10]

Just compensation for a portion taken from a uniform parcel must be determined as it relates to the entire parcel's market value, *Jefferson Ctr. Assocs.*, 958 P.2d at 500, including any reasonably probable potential future use of that parcel, *Stark*, 192 Colo. at 398, 560 P.2d at 79. Whether property is sufficiently uniform to be valued as a whole is an issue for the fact finder to determine. *Jefferson Ctr. Assocs.*, 958 P.2d at 502. In this case, the parties agree that the property's most advantageous use is for mixed-use development. Likewise, the record demonstrates that the property is both physically uniform and uniformly zoned for agricultural use. Thus, the Palizzis' valuation evidence relating to the property's most advantageous potential future use was admissible and the trial court did not abuse its discretion in so holding. Requiring the partial taking to be valued as if the portion taken was severed from the whole and frozen in its existing use would result in the landowner receiving less than a fair valuation of what the government has taken.

Furthermore, the fact finder is tasked with determining the amount of just compensation to which a landowner of condemned property is entitled, based on the present market value. *Id.*; *Goldstein*, 192 Colo. at 424–25, 560 P.2d at 82–83. In so doing, the fact finder may consider any relevant evidence that a buyer or seller in a voluntary transaction in the marketplace would consider, including the potential for that property's development and the costs of development, such as dedication requirements. *See Goldstein*, 192 Colo. at 425, 560 P.2d at 83; *Stark*, 192 Colo. at 398, 560 P.2d at 79; *Webb*, 41 Colo.App. at 14, 585 P.2d at 291. Evidence of a dedication requirement as a condition of development is undoubtedly admissible at trial because it is relevant to the present market value of the property and the costs of potential future development. *See Webb*, 41 Colo.App. at 14, 585 P.2d at 291; *Goldstein*, 192 Colo. at 425, 560 P.2d at 83. A dedication requirement is no different than many other development costs—such as street and utility easements, planning and construction, and obtaining the necessary development approvals—that a prospective buyer considers when determining whether and at what price to buy undeveloped property.

However, we see no need to create a broad preclusive rule limiting valuation evidence to the condemned property's existing use when that property will be subject to a dedication requirement. The determination of value is a task the fact finder is uniquely capable of, and all relevant evidence should be available to assist it in making this determination. Furthermore, the party arguing that the dedication requirement lowers the value of the condemned property has an equal opportunity to present evidence to prove such an effect on the property's value. *See Goldstein*, 192 Colo. at 426, 560 P.2d at 84 (reasoning that an opposing party is able to introduce evidence of the differences between comparable sales and the condemned property, and that the fact finder may consider any and all differences, facts, or cir-

---

**10.** Our divergence from California law on this issue stems in part from deeper differences on how to value property in condemnation proceedings. In California, it is improper to use an average value for the entire parcel when determining the value of the condemned portion unless each square foot of the property is valued exactly the same. *E.g.*, *Lone Tree Invs.*, 7 Cal. App.4th at 934, 9 Cal.Rptr.2d 326. Thus, the California Courts of Appeal have determined that, where dedication of the condemned portion would be required as a condition of development, the condemned portion does not have the same value per square foot as the remaining parcel. *Id.*

In Colorado, as in Nevada, the landowner is compensated for a partial taking by considering the condemned property's value in relation to the whole parcel. *Jefferson Ctr. Assocs.*, 958 P.2d at 502; *Robinson*, 134 P.3d at 707–08. We diverge from this rule only where the entire parcel is insufficiently uniform and severing the condemned portion from the parcel benefits the landowner. *Jefferson Ctr. Assocs.*, 958 P.2d at 502; *cf. Robinson*, 134 P.3d at 708. Further, our evidentiary rules in valuation proceedings are meant to be inclusive. *Jefferson Ctr. Assocs.*, 958 P.2d at 498; *Webb*, 41 Colo.App. at 14, 585 P.2d at 291. Accordingly, Colorado valuation law is more analogous to Nevada law.

cumstances affecting the value of condemned property).

In this case, both parties' appraisers discussed the dedication requirement at trial. Brighton had the opportunity to argue to the jury that the dedication requirement limited the value of the condemned portion of the entire property, and the jury had before it Brighton's appraisal valuing the property at its existing agricultural use. Furthermore, the evidence before the jury supported its verdict. The Palizzis' appraisal, upon which the jury appears to have based its valuation, accounted for both the potential future use of the entire property for mixed-use development and the costs associated with that potential development. The jury's valuation was strikingly similar to the sales of the Palizzi I and Palizzi II parcels, upon which the Palizzis' appraiser relied in his valuation.

Brighton argues that allowing evidence of the entire property's potential for development fails to replicate a voluntary real estate transaction, as is the goal of a condemnation valuation proceeding, see Schulhoff, 167 Colo. at 76, 445 P.2d at 404; Goldstein, 192 Colo. at 425, 560 P.2d at 83. To support this argument, Brighton claims that a prospective buyer would pay the same amount for a parcel of land that has not met the dedication requirement as he would pay for the same parcel minus the portion that would need to be dedicated. Because the developer will necessarily have to forfeit that piece of the parcel as a precondition to development, Brighton argues that the dedicated piece has no value to the prospective buyer.

This argument fails to reflect market realities in the sale and purchase of real estate. A developer seeking to purchase undeveloped land does not sever the property into pieces, calculate each piece's value separately, and then add the pieces together to reach the property's value. Instead, a developer considers the dedication requirement as part of his overall assessment of the value of the property, its development potential, and the various costs associated with future development. Likewise, if the dedication requirement has already been met, the developer will calculate this into his overall determina-

tion of the price he is willing to pay for the property. In other words, a developer assesses the value of the property in gross, taking into account all costs and benefits associated with the property.

The Palizzis presented evidence at trial in support of this market reality. The Palizzi family sold the Palizzi I parcel to a developer in 1999 for $3.92 per square foot. The sale was conditioned on the developer receiving all necessary approvals from Brighton to develop the parcel. Brighton required the developer to dedicate fee title to a strip of land, similar to the one condemned in this case, in order to widen Bromley Lane. To meet this requirement, the developer purchased an additional 1.3 acres from the Palizzi family for nearly the same price as it purchased the rest of the parcel. The developer did not consider this strip to be valueless; instead, the strip was valued as part of the whole parcel and as necessary to achieving the developer's plan for the parcel.

Brighton was entitled to determine that the improvement of Bromley Lane was necessary in the face of increasing or anticipated traffic needs, see § 38–6–101, C.R.S. (2009), and its decision accords with its comprehensive plan, which anticipates that Bromley Lane will become a major arterial in Brighton. Nonetheless, Brighton's determination that Bromley Lane required improvements—now rather than later—was not necessitated by any development proposed by the Palizzis. See Krupp v. Breckenridge Sanitation Dist., 19 P.3d 687, 695 (Colo.2001) (A dedication requirement necessitates just compensation unless the dedication is "related … to the impact of proposed development.") (quoting Dolan v. City of Tigard, 512 U.S. 374, 391, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994)). Brighton decided to initiate this condemnation proceeding instead of waiting for the Palizzis or some future developer to trigger the dedication requirement by applying for annexation and rezoning. As such, Brighton must pay the fair market value for the road improvement strip and is not able to discount the price because, at some indefinite future time, the same strip might have been dedi-

cated.[11]

The trial court did not abuse its discretion when it denied Brighton's motion in limine to exclude the Palizzis' valuation evidence.

## III.

We reverse the court of appeals' judgment and remand this case for further proceedings in the trial court consistent with this opinion.

Justice COATS dissents, and Chief Justice MULLARKEY and Justice MARTINEZ join in the dissent.

Justice COATS, dissenting.

While I agree that the Palizzis are entitled to compensation for the strip of their land condemned by Brighton (even though rezoning would require its cession to the city for nothing), I do not believe they are entitled to be compensated at a market rate commensurate with a use to which that strip could never be put. Although the majority's analysis is couched in terms of discretion to admit or exclude valuation evidence, it necessarily implicates the legal standard for proving value in a partial taking situation and, therefore, the materiality of particular valuation evidence. Because the condemned strip of property at issue could, as a matter of law, never have been rezoned for mixed commercial and residential purposes without a waiver by Brighton of its dedication requirement, I (like the court of appeals) would find that purpose or use to be one which the jury should never have been permitted to consider and as to which valuation evidence should never have been admitted. I therefore respectfully dissent.

The parcels of land in question could, by governmental agreement between the city and county, be rezoned and developed *only* upon annexation by Brighton. It is undisputed in this case that, as a pre-condition of any such annexation and rezoning, the city both could and would require the Palizzis, as it had done with all other owners of land contiguous to Bromley lane, to dedicate to the city the particular strip of land being valued in this action and that this condemnation satisfies the current dedication requirement for the Palizzis' remaining land. Under these undisputed facts, in the absence of some legal fiction to the effect that the greater parcels could be rezoned first and only then the strip in question dedicated, the condemned strip could never, even momentarily or conceptually, exist as part of a greater parcel entirely zoned for mixed commercial/residential use. Therefore no willing buyer could, even in theory, have any prospect of purchasing a greater rezoned parcel that included this strip.

The majority does not directly dispute this reasoning but would nevertheless permit a trier of fact to value the condemned strip as commercial/residential property for the reason that prior to condemnation it was included within parcels, the remainders of which could be rezoned and developed for that purpose upon its dedication. As I understand its opinion, the majority believes that whenever it would be advantageous to the owner, property being condemned may be assigned a proportionate share of the value of a greater parcel within which it is included, and the decision whether to do so must remain with the finder of fact. I consider this proposition to be not only a misreading of our existing law but, at least whenever differences in legal status preclude the condemned portion from having the same "highest and best use" as the remainder, in fact a violation of it.

Even the intermediate appellate court opinion upon which the majority rests its characterization of the law of this jurisdiction would not sanction the majority's analysis. In *City of Westminster v. Jefferson Center Associates,* 958 P.2d 495 (Colo.App.1997), the court of appeals actually found it to be error to force the commission to value the portion of a parcel taken as a part of the whole when that portion potentially had a highest and best use making it more valuable by acreage than the greater parcel of which it was a part. Equally importantly, however, the ap-

---

11. Brighton and the Palizzis agree that, if and when an annexation and rezoning proceeding for the entire property is before the city, Brighton may seek to recoup, as a condition for annexing and rezoning the entire property, the amount paid in just compensation for condemnation of the road improvement strip.

pellate court in *Jefferson Center Associates* would only have left to the fact finder the question of uniformity—whether to value the taken portion separately or as part of the whole—because any disparity in the highest and best uses of the condemned portion and the remainder of the parcel was a purely factual question in that case, dependent entirely upon possible differences in location and other physical characteristics of the respective parcels. An intermediate appellate court holding is of course not authoritative for this court, but even if it were, the holding of *Jefferson Center Associates* in no way suggests that a fact finder must be permitted to disregard undisputed differences in legal status which necessarily destroy the uniformity of the parcel.

I also believe that with the sole exception of Nevada, the out-of-state authorities relied on by the majority offer no support for its valuation theory. Rather than leaving the import of legal restrictions to a trier of fact, these cases simply uphold court rulings admitting evidence of dedication requirements offered by condemning authorities themselves in support of their own appraisals. *See State ex rel. Dep't of Transp. v. Lundberg,* 312 Or. 568, 825 P.2d 641 (1992); *Dep't of Pub. Works & Bldgs. v. Exch. Nat'l Bank of Chicago,* 40 Ill.App.3d 623, 1 Ill.Dec. 250, 356 N.E.2d 376 (1976). The authorities from Missouri, in particular, clearly apply a "before and after" method of valuation which, even according to *Jefferson Center Associates,* 958 P.2d at 500, is not accepted as a measure of damage in partial taking situations in this jurisdiction. *State ex rel. Mo. Highway & Transp. Comm'n v. Modern Tractor & Supply Co.,* 839 S.W.2d 642 (Mo. Ct.App.1992); *State ex rel. Mo. Highway & Transp. Comm'n v. Sturmfels Farm Ltd. P'ship.,* 795 S.W.2d 581 (Mo.Ct.App.1990). Perhaps most significantly, however, the authorities from Missouri appear to contemplate, depending upon the constitutionality of the requirement itself and the actual likelihood of rezoning and dedication in the future, that the owner may suffer no damage as a result of the condemnation and therefore that he may be entitled to no compensation whatsoever. *See Modern Tractor,* 839

S.W.2d at 653; *Sturmfels Farm,* 795 S.W.2d at 588.

Only Nevada offers support for the majority's position, *see City of N. Las Vegas v. Robinson,* 122 Nev. 527, 134 P.3d 705 (2006), and from its brief explanation, I think it clear that Nevada makes the same conceptual error as the majority. As the majority notes, just compensation is measured by the actual fair market value of the condemned property, taking into consideration its most advantageous use at the time of the condemnation; and in the event of a partial taking, the condemned portion should be valued as a part of the entire parcel, "so long as the property is sufficiently uniform." Maj. op. at 962. When the highest and best use of a parcel is not uniform throughout, there is authority for the proposition that the condemned portion may be valued for a more advantageous use to which it could reasonably be put, *see Jefferson Ctr. Assocs.,* 958 P.2d at 501 (quoting *Dep't of Trans. v. HP/Meachum Land Ltd. P'ship,* 245 Ill. App.3d 252, 185 Ill.Dec. 351, 614 N.E.2d 485, 487–88 (1993)), but we have never suggested that it could be valued for a use to which it could never be put merely because other portions of the parcel could be put to that higher use.

The condemned portion of a greater parcel can be valued as part of the whole *only* for a highest and best use that is legally and factually uniform throughout the tract. I believe the majority's attempt to enhance the value of the condemned strip in this case by valuing it as part of a non-uniform parcel violates our prohibition against valuing condemned property for fictitious or speculative uses and gives the owner a windfall at the expense of taxpayers. And while the question of factual uniformity may be one for the trier of fact, the legal import of undisputed zoning and dedication requirements severing one portion of a parcel as a condition of rezoning the remainder must be determined by the court. The evidence in this case established that the highest and best use to which the greater parcels in question could uniformly be put—without simultaneously severing the strip condemned by Brighton—is agricultural.

Because I believe the majority not only blurs the distinction between matters of fact and matters of law with regard to zoning and dedication requirements but, even more fundamentally, misperceives the law governing valuation of a portion as a part of the whole, I respectfully dissent.

I am authorized to state that Chief Justice MULLARKEY and Justice MARTINEZ join in this dissent.